## UNITED STATES v. WILSON.

### (District Court, E. D. Missouri, E. D. May 20, 1895.)

**1. CRIMINAL LAW—SELLING LIQUOR WITHOUT LICENSE—WHAT ARE LIQUORS.**

The term "domestic distilled spirits," as used in the law requiring retail liquor dealers to pay a special tax to the United States before engaging in the business, does not include patent or proprietary medicines, manufactured and sold, in good faith, for curative or health-imparting properties, although they may contain a large percentage of distilled spirits as one of their essential ingredients; nor does the fact that men with strong appetites for drink occasionally buy such preparations, and by the use of them become drunk, furnish any adequate reason for classifying them as distilled spirits.

**2. SAME—DECEPTIVE NAMES.**

The law, however, is not to be evaded by mere deceptive names, and if alcoholic beverages in which the essential ingredient is distilled spirits, disguised by aromatic or other drugs, are commonly bought and sold as and for intoxicating beverages, the same are not to be classed as patent or proprietary medicines, by whatever names they may be known, and the seller thereof is liable to the tax as a retail liquor dealer.

Indictment for carrying on business of retail liquor dealer without having first paid special tax.

It appeared by the facts in evidence in this cause that the defendant was carrying on a general merchandise business, such as usually conducted at country stores. In addition to the usual stock of groceries, dry goods, agricultural implements, etc., he sold patent or proprietary medicines. Among the latter were preparations of the Donnell Manufacturing Company known as "Donnell's Empire Tonic Bitters." These latter were sold by the bottle, in the original package as put up by the proprietor. Each bottle contained about 13 ounces of liquid. Of this, $2\frac{1}{5}$ ounces was alcohol, $9\frac{4}{5}$ ounces distilled water, balance consisting of various barks, roots, drugs, flavors, and sugar. On each bottle a printed label was pasted, giving the name of the article, the various diseases for which it was supposed to be a specific, and the dose in which it was to be taken. The testimony on the part of the United States was that, while the defendant had sold by the bottle, in the original package or bottle, as received by him from the compounder, his customers had sometimes opened the bottles in his store, and drank from them on the premises, and that in some cases the same effect had been produced on persons using it as if they had drank whisky; that the preparation contained from 17 to 20 per cent. absolute alcohol, and was drunk as a beverage by some purchasers, to the knowledge of defendant. On the part of the defense, evidence was introduced tending to show that the preparation was a genuine medicinal preparation; that it was put up by the manufacturers in accordance with a prescribed formula, which they had followed for over 25 years, and sold by them to dealers as a medicinal preparation or patent medicine. Testimony of physicians and of chemists was also introduced, tending to show that the preparation contained no more alcohol than necessary to preserve the various drugs, etc., in solution, to prevent fermentation, and make the mixture palatable; that less alcohol present in the preparation would have rendered it liable to speedy fermentation, and that it was a useful tonic and alterative. The

defendant had not paid special tax as a retail liquor dealer. It was also in evidence that the Donnell Manufacturing Company, compounders of the preparation, had been in business for over 25 years, putting up these bitters and other preparations, and had never been required to pay special taxes as rectifiers, compounders, or wholesale or retail liquor dealers. At the conclusion of the testimony and argument of counsel on the law and the facts, counsel for defendant asked the court to charge the jury as it had charged in the previous case of U. S. v. Holley,[1] tried before the same court 10 days previously. The Court: "I will give substantially the same charge in this case that I previously gave at your request in the Holley case."

W. H. Clopton, U. S. Atty., and W. S. Anthony, Asst. U. S. Atty., for the United States.

Geo. D. Reynolds, for defendant.

PRIEST, District Judge (charging jury). The federal law requires all retail dealers of liquor to pay a special tax before engaging in that business. The defendant in this case is charged with a violation of that law,—that is, for selling by retail, liquor in less quantity than five gallons. The law itself defines who are retail liquor dealers. It says that every person who sells or offers for sale foreign or domestic distilled spirits, wines, or malt liquors, in less quantity than five gallons at the same time, shall be regarded as a retail dealer in liquors. The proof in this case shows the sale of no other liquor by the defendant in less quantities than five gallons, at the time charged in the indictment, than "Empire Tonic Bitters," prepared by Donnell & Co., and commonly referred to as "Donnell's Bitters;" and it is claimed by the government that this preparation comes within the definition of "domestic distilled spirits." Domestic distilled spirits, as used in the law just quoted, does not include patent or proprietary medicinal preparations manufactured and sold in good faith for curative or health-imparting properties, although they may contain a large percentage of distilled spirits as one of the essential ingredients of the preparation. The law, however, is not to be evaded or juries to be deceived by mere names which may be added to or used to designate a certain preparation composed in the essential parts of distilled spirits. If alcoholic beverages, in which the essential ingredient is distilled spirits, in the form currently known as alcohol or whisky, disguised by aromatic or other drugs, which are evidently mere substitutes for whisky or other forms of distilled spirits, are commonly sold and bought as and for an intoxicating beverage, then such preparations are not to be classed as patent medicines or proprietary medicines, no matter by what names they may obtain circulation and credit. If, on the other hand, it appears from the evidence that the quantity of alcohol employed in the preparation of them is not greater than is necessary to extract the virtue of the medicinal herbs used, and to hold the same in solution, and that the articles are put up, advertised, and sold by the manufacturers as medicinal preparations, and they possess, or at least in good faith are believed to possess, curative properties, or are promotive of good health, then they should be classed as medicinal preparations, and not as distilled spirits, and the dealers in the same

[1] See note at end of case.

are not retail liquor dealers within the meaning of the federal statute; nor does the fact that men with strong appetites for drink occasionally buy such preparations, and by the use of them become drunk, furnish any adequate reason for classifying them as distilled spirits. If a preparation is not intended as a beverage, but is put up in good faith as a medicinal preparation, and is only advertised and sold by the manufacturer as such, and there are reasonable grounds for believing it possesses curative or health-giving qualities, and no more spirits are used in the preparation than are reasonably necessary to extract and hold in solution the medicinal properties of the various drugs included, such preparation is medicinal, and does not lose its character as such, although it is intoxicating when used to excess. If, therefore, you find that the articles sold by the defendant were patent or proprietary medicinal preparations, then you should find the defendant not guilty. The article in controversy was, as it was in the actual bottle or package put up and sold by the manufacturer, either distilled spirits or a proprietary medicine. If it was distilled spirits,—that is to say, alcohol or whisky being the chief component part,—and only disguised by the presence of medical drugs when put up and sold by the manufacturer, then the defendant is liable to the tax as a retail liquor dealer, if he sold it, provided he knew that it was intoxicating, and was bought and used as a beverage, and not for any medicinal properties supposed to be contained in it; but if it was, when manufactured or compounded, a proprietary medicine, put up and sold by the manufacturer in good faith, and was sold by the defendant in the original package by the bottle, with the manufacturer's label on it, containing directions for using it, the article did not lose its character as a proprietary medicine, and the defendant, in selling it, did not become a retail liquor dealer, and is entitled to a verdict of not guilty at your hands.

It only remains for me, gentlemen of the jury, to call your attention to another principle of law, always of value in criminal cases: That is that the burden of proof rests upon the state, and that proof must go to the extent of convincing your understanding of the truth of the claims in the indictment beyond a reasonable doubt. In other words, if you have a reasonable doubt as to any element necessary to constitute the offense with which the defendant stands arraigned, it is your duty to give him the benefit of the doubt and return a verdict of not guilty.

Verdict, not guilty.

NOTE. On May 10, 1895, case of U. S. v. Holley, above referred to, was tried before the same court and a jury, and with the same counsel. The facts in it were practically the same as in the case of U. S. v. Wilson, except that the testimony of the government showed that on one occasion a gang of laborers had come into the store of the defendant, bought several bottles of the Empire Tonic Bitters, drank them on the premises, and had become intoxicated. Charge in this case practically the same as above, with a few verbal alterations. Verdict, not guilty.