ALLEN, Internal Revenue Collector, v. LIQUID CARBONIC CO.

(Circuit Court of Appeals, Eighth Circuit. April 26, 1909.)

No. 2,850.

INTERNAL REVENUE (§ 9\*)—SPECIAL TAX ON RECTIFIERS AND LIQUOR DEALERS —MANUFACTURERS OF EXTRACTS—"BEVERAGES"—"LIQUORS."

Flavoring extracts, composed of from 40 to 50 per cent. alcohol, 3 per cent. flavoring principle, and the remainder water, the quantity of alcohol being no greater than is required to hold the flavoring principle in solution, which are not made, sold, nor used, nor capable of being used, as a beverage, but which are chiefly used in flavoring soda water syrups, the quantity of extract used in each glass of the beverage being about 3 or 4 drops, are not "beverages," nor "liquors," within the meaning of Rev. St. § 3244 (U. S. Comp. St. 1901, p. 2096), and the manufacturer is not subject to special tax thereunder as a rectifier or wholesale or retail dealer in liquors.

[Ed. Note.—For other cases, see Internal Revenue, Dec. Dig. § 9.\*]

For other definitions, see Words and Phrases, vol. 1, p. 769; vol. 5, pp. 4180–4182.]

In Error to the Circuit Court of the United States for the Eastern District of Missouri.

Truman P. Young (Henry W. Blodgett, on the brief), for plaintiff in error.

Thomas E. Lannen, for defendant in error.

Before SANBORN and ADAMS, Circuit Judges, and RINER, District Judge.

RINER, District Judge. This action was originally brought in the circuit court of the city of St. Louis and removed to the Circuit Court of the United States for the Eastern Division of the Eastern District of Missouri. The action sought to recover certain taxes and penalties paid under protest by the defendant in error, hereafter called the "company," to the plaintiff in error, United States collector of internal revenue for the First district of Missouri, hereafter called the "collector."

Three causes of action are set out in the petition. By the first cause of action it is sought to recover a tax charged to and paid by the company, under protest, as a rectifier of distilled spirits, in the sum of $100 and $50 penalty; by the second cause of action it is sought to recover a tax charged to and paid by the company, under protest, as a wholesale liquor dealer, in the sum of $100 and $50 penalty; and by the third cause of action it is sought to recover a tax charged to and paid by the company, under protest, as a retail liquor dealer, in the sum of $25 and $12.50 penalty. No question is raised as to the company's liability for the penalty, if the tax itself was properly assessed by the collector.

The case was tried to the court without a jury, a written stipulation having been filed waiving a jury, and the court made and entered the following findings of fact and conclusions of law:

\*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

"(1) That plaintiff from the 30th day of June, 1905, to the 2d day of July. 1906, was engaged in the manufacture and sale of certain extracts within the city of St. Louis and in the First collection district of Missouri; that said extracts were sold by the plaintiff at times in quantities of more than five gallons at the same time, and at times in quantities of less than five gallons at the same time; that said extracts were the only product containing alcohol manufactured, handled, or sold by plaintiff during said time.

"(2) That said extracts were manufactured in such a way that they contained from 47 to 57 per cent. water and from 40 to 50 per cent. of alcohol and about 3 per cent. of flavoring principle; that fruit juice was used as flavoring principle when the juice of the particular fruit was sufficiently strong to produce a concentrated extract; that because of the lack of flavoring strength in a large majority of the natural fruit juices it is impossible to produce an extract from such fruit; that plaintiff produced the natural extracts when possible, but, where no natural extract could be made, plaintiff produced an artificial extract by using as a flavoring principle about 3 per cent. of certain ethers, the proportions of alcohol and water remaining the same as in the natural extracts. These extracts are known as 'etherial extracts.'

"(3) That these extracts are manufactured in the same general way and contain substantially the same amount of alcohol as extracts manufactured and sold for similar uses and purposes, and commonly known as 'sode water extracts.'

"(4) The court further finds that said extracts cannot be made or manufactured without the use of alcohol in approximately the strength used by plaintiff; such per cent. of alcohol being necessary to hold the flavoring principles in solution.

"(5) The court further finds that said extracts could not be drunk as a beverage in their original and full strength because of the strength of the flavoring principle, but were susceptible of use only in imparting flavor to some drink or food intended for human consumption.

"(6) The court further finds that said extracts were never manufactured or used or sold by plaintiff as a beverage, but that plaintiff manufactured and sold such extracts as a flavor only; that no one with the knowledge or consent of plaintiff ever sold or used said extracts for any other than flavoring purposes.

"(7) That plaintiff manufactured and sold said extracts almost entirely as soda water flavors, to be used in flavoring the syrup which goes into soda water. A small amount of the extract was placed in the syrup, and this syrup was placed in the glass to which carbonated water was added, so that in one glass of soda water there were about three or four drops of said extract. Such extracts, sold to the soda water trade, bore labels which gave directions for the use of said extracts for flavoring soda water in the manner above set out.

"(8) That plaintiff also manufactured very small quantities of extracts which were used by saloon keepers and others to flavor mixed drinks. These extracts were labeled 'bar use,' and contained substantially the same ingredients as the extracts used to flavor soda water, except that the bar use extracts were somewhat lower in alcoholic content. Plaintiff at long intervals sold very small amounts of the bar use extracts, and these sales were made only in bottles provided with squirt tops. Such extracts were simply used to flavor mixed drinks by adding a few drops of some extract from the squirt top bottle, or, as it has been expressed, by adding a dash of said extracts to the mixed drink before it is drunk by the purchaser.

"(9) The court further finds that all the other material allegations of plaintiff's petition, not covered by the foregoing special findings, are true.

"And the court rules as a matter of law, upon the facts as above found. that plaintiff between said dates, to wit, the 30th day of June. 1905, and the 2d day of July, 1906, was not carrying on the business of a rectifier of distilled spirits, or a wholesale liquor dealer, or a retail liquor dealer within the First collection district of Missouri."

A judgment was entered in favor of the company and against the collector, for the sum of $366.28, and the collector brings the case here by writ of error.

The extracts manufactured by the company were principally used to flavor soda water syrup, and most of it was sold for that purpose. A small quantity of the extract was placed in the syrup, the syrup placed in a glass, and then carbonated water added until the glass was filled, so that in a glass of soda water there would be three or four drops of the extract. These extracts contained from 40 to 50 per cent. alcohol and were mixed with fruit juices, and, where the natural flavor of the fruit juice produced an essence sufficiently strong, no other ingredients were used; when they did not, ether was used. In addition to manufacturing these extracts for soda fountains, the company also manufactured and sold, on special orders, extracts to saloon keepers. These extracts, as the testimony shows and the court below found, were just the same as the soda water extracts, except that they were somewhat lower in alcoholic content, and were sold in squirt top bottles and labeled "bar use," and were used to flavor mixed drinks by squirting a drop or two of the extract through the squirt top bottle into the mixed drink.

The court below found that the extracts were never manufactured, used, or sold by the company as a beverage, and that they could not be drunk as a beverage in their original and full strength because of the strength of the flavoring principle, but were susceptible of use only in imparting flavor to drink or food intended for human consumption. We think the testimony supports this finding of the court and that these extracts are not spurious imitations or compound liquor, within the meaning of section 3244 of the Revised Statutes (U. S. Comp. St. 1901, p. 2096).

The case is altogether different from the case of United States v. Stafford (D. C.) 20 Fed. 720. In that case the defendant was selling what was known as brandy cherries; but the evidence disclosed that as a matter of fact the bottles so labeled contained nothing but whisky and a few cherries, and was sold over a bar, that persons purchasing it would frequently open the bottle right at the bar and drink the contents, leaving the bottle and cherries, and that they became drunk from its use. It was perfectly apparent in that case that putting cherries in the bottles was a mere device for dealing in spirituous liquor without the payment of the special tax. In this case, however, the court below found that these extracts were not sold to be used as a beverage, nor could they be used as a beverage, and that the amount of alcohol employed in their manufacture was not greater than was necessary to hold the other ingredients entering into the composition of the extract in solution.

As already indicated, we think this finding is supported by the testimony, and that these extracts are not beverages or liquor, within the meaning of the section of the statute above referred to. United States v. Stubblefield (D. C.) 40 Fed. 451; United States v. Wilson (D. C.) 69 Fed. 144; United States v. Calhoun (D. C.) 39 Fed. 604.

The judgment of the Circuit Court is affirmed.