(C. D. 1312)

POLAK & SCHWARZ, INC. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided March 15, 1951)

*Eugene R. Pickrell* (*Michael Stramiello, Jr.,* of counsel) for the plaintiff.
*David N. Edelstein,* Assistant Attorney General (*William J. Vitale,* special attorney), for the defendant.

Before CLINE, EKWALL, and JOHNSON, Judges

EKWALL, Judge: A commodity described as "Raspberry Flavour Flavoring Extract," entered at the port of New York, was classified and assessed with duty as a flavoring extract containing 20 per centum or less of alcohol under the appropriate paragraph of the Tariff Act of 1930. In addition to the regular customs duty it was assessed with an internal revenue tax of $9 per wine gallon under section 2800 (a) (1) of the Internal Revenue Code, as amended (26 U. S. C. A. p. 528, and 58 Stat., part 1, p. 61), following the general definition of "Distilled spirits," as set forth in section 2809 (b) (1) of the Internal Revenue Code (26 U. S. C. A. p. 585).

It is claimed on behalf of the plaintiff herein that the imported merchandise is not subject to internal revenue tax. No question of the proper tariff classification of the merchandise is raised.

The applicable sections of the internal revenue code are as follows:

### § 2800. Tax

#### (a) Rate

**(1) Distilled spirits generally.** There shall be levied and collected on all distilled spirits in bond or produced in or imported into the United States an internal revenue tax at the rate of $9 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond.

**(2) Products of distillation containing distilled spirits.** All products of distillation, by whatever name known, which contain distilled spirits or alcohol, on which the tax imposed by law has not been paid, shall be considered and taxed as distilled spirits.

### § 2809. Definitions

\*          \*          \*          \*          \*          \*          \*

#### (b) Distilled spirits.

**(1) General definition.** Distilled spirits, spirits, alcohol, and alcoholic spirits, within the true intent and meaning of this chapter, is that substance known as ethyl alcohol, hydrated oxide of ethyl, or spirit of wine, which is commonly produced by the fermentation of grain, starch, molasses, or sugar, including all dilutions and mixtures of this substance.

The report of the customs laboratory, insofar as it was received in evidence, is as follows:

The sample is a flavoring extract containing 14.2% absolute ethyl alcohol by weight (17.5% by volume).

Weight per gallon at 15.56° C.=8.14 lbs.

The vice president of the plaintiff corporation, in charge of production, supervision, and control of the manufacturing of flavoring extracts, testified that he has been in that business for almost 32 years; that he is familiar with the product before the court and saw such product manufactured in Holland in July 1947; that he has seen the imported product since it was imported at the plaintiff's factory in New Jersey; that the process he saw in Holland in 1947 consisted of gathering and crushing fresh raspberries, after which they are allowed to ferment for a period of days. After this period of fermentation, they are subjected to a rapid distillation, whereby the flavoring principles of the fruit are removed from the mass as quickly as possible by this distillation. He further testified that the product was imported to be used in a blending with products of domestic manufacture; that it has a character and type distinctive and apart from any domestic manufactured product; that for said reason plaintiff imported it for use in blending for a certain top note in the products that are manufactured by said plaintiff, and that it was so used. Some of it is com-

pounded with other flavoring extracts. The compounded extract was produced for soda-water flavoring and was sold to various bottlers of carbonated beverages. About 6 per centum of the imported product is used in conjunction with 94 per centum of other flavoring extracts. The imported product can be used in its condition to flavor a beverage, and it would be used in the proportion of from 4 to 6 ounces to a gallon of sirup, which in turn would flavor 6 gallons of finished beverage—a proportion of about 6 per centum to 8 per centum of flavor in the finished beverage. This witness further testified that as imported the flavoring extract has a strong fruit taste, definitely raspberry, and is not palatable; that the flavor remains in the mouth for quite a few minutes; that it is not fit for use as a beverage, in that it is too strong in flavor, and is not a palatable drink. It has never been used to manufacture, rectify, or blend alcoholic beverages and it is not suitable for such use. The extract both as imported and diluted with other extracts could be used in the production of soft drinks. The object of the fermentation is to increase the flavor of the fruit, and during fermentation, of course, the alcohol is developed. The witness stated his understanding to be that after fermentation the crushed raspberry product contained 3 per centum of alcohol by volume. The process of distillation is terminated when the desired flavoring principles are distilled over, and that is at the point, usually, when the alcohol is all removed from the mash.

A chemist employed by the plaintiff for about 6 years testified on behalf of said plaintiff. His experience as a chemist in connection with flavoring extracts extended over about 20 years. At the request of the vice president in charge of production for the plaintiff corporation, who also supervised and controlled the manufacture of flavoring extracts, this witness tested the imported commodity for flavoring strength. He stated that the achieved purpose of using alcohol in flavoring extracts is to hold in solution the actual flavoring oils, "which are aldehydes and ketones, esters," and many of them are unknown as a composition, but they are not soluble in water alone; they must have an alcoholic medium. The amount of alcohol required to retain the flavoring principle in solution differs, ranging from 15 per centum to 25 per centum. This witness stated that he tasted the imported product in its imported condition and found that he could not take more than a sip of it because of its biting and medicinal-like flavor, and its strength. From tasting it, he obtained a rough idea as to how much it must be cut down in order to get an idea of its flavoring value. As a result of experimentation, he found that the commodity, if used by itself, cannot be contained in a finished beverage to a greater quantity than about six-tenths of 1 per centum, because of its flavor strength. In the opinion of this witness, the product, as

imported, is entirely unfit for beverage purposes—because of its powerful flavor it is extremely unpalatable.

On cross-examination he stated that in order to use the imported commodity in the best manner it would have to be diluted or compounded with other extracts. In the production of soft drinks it is diluted in the usual way after it has been made a component of the finished flavor. The finished flavor will be used in the proportion of about three-quarters of 1 per centum of finished beverage, possibly one-half of 1 per centum, depending upon the individual bottler. Based upon his experience, he stated that the imported product should not be used without the addition of acids or sweetening agents to make a carbonated beverage; it is too strong.

The question before the court for determination is whether this flavoring extract, containing 17.5 per centum alcohol by volume, falls within the definition of the Internal Revenue Code, above set forth, for distilled spirits and, as such, is subject to the internal revenue tax of $9 assessed thereon.

Plaintiff's contention that the instant product is not subject to such tax is based upon the wording of said sections 2800 (a) (1) and 2809 (b) (1), which sections primarily have remained unchanged for many years, except for changes in the rate of the tax, the definition of distilled spirits as given in section 2809 (b) (1) having been reenacted without change since Congress defined that term in section 4 of the act of July 20, 1868, 15 Stat. 126, Ch. 186.

Plaintiff contends that because the instant commodity was classified as flavoring extract for duty purposes, rather than as distilled spirits, that fact precludes the imposition of an internal revenue tax as distilled spirits. In support of this contention the following cases are cited: *Wing Yee Chong & Co.* v. *United States*, 11 Ct. Cust. Appls. 329, T. D. 39142, and *Shun Yuen Hing & Co.* v. *United States*, id. 331, T. D. 39143. However, in a later case, *Distillers Co., Ltd.* v. *United States*, 8 Cust. Ct. 218, C. D. 609, it was held that certain flavoring extracts were properly dutiable under the provision therefor in the Tariff Act of 1930 (paragraph 24, as modified by the trade agreement with Belgium, T. D. 47600), but taxable as distilled spirits for the purpose of the internal revenue tax. The court, in so holding, used the following language:

In the case of *DeFremery & Co.* v. *United States*, C. D. 455, which was adhered to on rehearing (C. D. 587), the court in commenting upon the seeming incongruity of assessing a commodity under one designation under the tariff act and under another and different designation for the purposes of the Liquor Taxing Act of 1934, used the following language:

It may seem incongruous to assess the commodities as "cordials" under the Tariff Act of 1930, as amended by the trade agreement with France, and as "distilled spirits" under the Liquor Taxing Act of 1934, but "distilled spirits" is a broad term which includes cordials. Therefore, the commodities are more specifically provided for under the term "cordials" in the Tariff

Act of 1930, as amended by the trade agreement, and in the absence of a provision for cordials of the kind herein involved in the Liquor Taxing Act of 1934, they would fall within the provision for distilled spirits in that act.

Paraphrasing this language the commodities here involved are most specifically provided for under the term "flavoring extracts" and in the absence of a provision for flavoring extracts in the Liquor Taxing Act of 1934, or the Revenue Act of 1938, they would fall within the provision for distilled spirits in those acts.

The flavoring extract here involved is specifically provided for in paragraph 24 of the Tariff Act of 1930 under the provision for flavoring extracts containing 20 per centum or less of alcohol. The Internal Revenue Code contains no provision for flavoring extracts. Therefore, under the holding in the *Distillers Co., Ltd.*, case, *supra*, if the instant commodity is found to be distilled spirits it would fall within the provision therefor in the Internal Revenue Code.

The record clearly shows that this flavoring extract is a product of distillation containing 14.2 per centum absolute alcohol by weight or 17.5 per centum by volume. The fact that it was produced from fruit, rather than as distilled spirits are commonly produced, by the fermentation of grain, starch, molasses, or sugar, does not exclude the instant merchandise from the operation of section 2809 (b) (1), *supra*. As was held by our appellate court in *DeFremery & Co.* v. *United States*, 31 C. C. P. A. (Customs) 83, C. A. D. 253 (appealed from C. D. 587), the definition of distilled spirits "merely tells how distilled spirits are 'commonly' produced." And as stated by the court in construing R. S. § 3248, the wording of which was the same as section 2809 (b) (1) here under consideration:

* * * It is a matter of common knowledge that alcohol can be produced from wine * * * which is made of fruit, or that a very potent alcoholic product can be distilled from hard cider. But these facts do not change the situation that the products defined in R. S. § 3248 are "commonly" made from the four things there referred to.

The case of *Allen* v. *Liquid Carbonic Co.*, 170 Fed. 315, cited by the plaintiff, in which the Circuit Court of Appeals, Eighth Circuit, held that a manufacturer of fruit extracts, similar to the extract before us, was not a rectifier of distilled spirits within the meaning of the third paragraph of section 3244 of the Revised Statutes, is not in point. There, the court held that the fruit extracts produced by the manufacturer were not "spurious imitations or compound liquor" nor were they beverages or liquor within the meaning of that section. Section 3248 of the Revised Statutes and the definition of distilled spirits therein set forth were not considered or discussed by the court, so far as the decision discloses. There is, therefore, no force to plaintiff's argument that it follows from that decision that the enactment of the portion of the Revised Statutes in the revenue acts which followed the decision in the *Allen* case, *supra*, amounted to legislative sanction and approval of the judicial interpretation of that definition of distilled spirits which was in effect when the decision was rendered.

Government counsel in the brief filed contends that the case of *Jordan* v. *Roche*, 228 U. S. 436, supports its position. In that case, the Court held that bay rum imported from Puerto Rico was subject to an internal revenue tax as an alcoholic distillate. Without discussing the various ramifications of that case, it is sufficient to point out that the definition of bay rum, therein contained, distinguishes that case from the instant case. We quote as follows:

Bay rum is a fragrant spirit obtained by distilling rum with the leaves of the bay-berry, or by mixing various oils with alcohol.

In the instant commodity, raspberries alone were used in the initial production process.

Government counsel also cites the appellate court's decision in *DeFremery & Co.* v. *United States, supra,* in which it was held that a commodity variously described as "cassis," "creme de cassis," and "cazanove cassis," was subject to internal revenue tax as distilled spirits. The process of production there involved consisted of steeping black currants in wine alcohol for 50 or 60 days and mixing the juice thus obtained with sugar to obtain the resultant product.

To summarize. As we understand plaintiff's position, it is that due to the fact that this commodity is not produced by the addition of any alcoholic, or, in fact, any other substance, but is fermented and distilled in order to obtain a concentrated flavor, it cannot be considered as a distilled spirit within the meaning of the definition above set forth. Plaintiff does not deny that the extract contains absolute ethyl alcohol to the extent of 14.2 per centum by weight and 17.5 per centum by volume. The legislative history of the internal revenue act and the decisions thereunder show the purpose of the law to impose a tax on all products of distillation which contain distilled spirits or alcohol. The fact that the instant commodity is not used as a beverage and is used only to flavor soft drinks cannot serve to defeat that purpose. In its condition, as imported, it has a substantial alcoholic content and is a product of distillation. We therefore hold that it is subject to internal revenue tax as assessed and overrule plaintiff's claim.

Judgment will be rendered for the defendant.