## MARESCA et al. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. September 27, 1921.)

No. 190.

1. **Criminal law ⊜⟹1208(2)—Trial judge invested with sole discretion as to sentences.**

Federal District Judge who imposed sentences in criminal prosecutions was invested with sole discretion, within the limits fixed by the statute, of determining the extent of the punishment to be inflicted.

2. **Criminal law ⊜⟹1092(9)—No extension of term after expiration.**

An order of the federal District Court extending time for filing bill of exceptions is invalid where made after term has expired.

3. **Criminal law ⊜⟹1090(1)—Right to bill of exceptions in criminal case in federal court statutory.**

The right to a bill of exceptions in a criminal case in the federal court is statutory.

4. **Time ⊜⟹10(8)—Bill of exceptions must be filed before end of term expiring on holiday.**

Bill of exceptions in a criminal case in federal court cannot be signed or filed on the day after the last day of a term of the District Court which falls on Sunday or a legal holiday.

5. **Time ⊜⟹10(1)—When Sunday is excluded.**

Where an act is required to be done in any certain number of days after or before a fixed time, Sunday is to be included in computing the number of days when it exceeds seven, but, if it is less than seven, Sunday must be excluded, and the same rule applies where holidays intervene.

6. **Criminal law ⊜⟹322—United States ⊜⟹26—President may exercise powers through heads of departments, and it is presumed that he authorized act by department head required of the President.**

The President of the United States may exercise through heads of departments the powers vested in him, and it must be presumed as a matter of law that the Secretary of the Treasury in approving a regulation promulgated by the Commissioner of Internal Revenue under Revenue Act Aug. 10, 1917, § 15 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115½l), did so by direction of the President.

7. **Intoxicating liquors ⊜⟹132—Volstead Act did not modify or repeal War Prohibition Act.**

The Volstead Act of October 28, 1919, did not in any way modify or repeal the provisions of the War Prohibition Act of November 21, 1918, in view of title 1, § 7, of the former.

8. **Statutes ⊜⟹64(2)—Invalidity of section of Food Control Act held not to render another section invalid.**

If parts of a statute are wholly independent of each other, that which is constitutional may stand, while that which is unconstitutional will alone be rejected, and hence section 15 of the Lever Act of August 10, 1917 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½l), providing that certain foods should not be used in the production of distilled spirits, is not unconstitutional, because section 4 (section 3115½ff), known as the price-fixing section, is invalid.

9. **Criminal law ⊜⟹15—Repeal of statute before conviction a bar to further proceedings.**

Where a statute which defines a crime and provides the punishment to be imposed upon the offender is repealed before judgment, and there is no proper saving clause, the repeal constitutes a complete bar to all further proceedings.

⊜⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. **Statutes ☞159, 171—Repeal and suspension from subsequent repugnant legislation must be inferred from necessity.**

The repeal and suspension of statutes are distinct matters, the suspension being limited in time and the repeal unlimited in time, but the suspension of a statute, like its repeal, may be express, as when declared in direct terms, or implied, when it is inferred from subsequent repugnant legislation, and, when not expressed, but only implied, must be inferred from necessity, and there must be such a conflict between the old and new statutes that the two cannot stand together, and then only to the extent of the repugnance.

11. **Intoxicating liquors ☞132—Lever Act and War Prohibition Act held inconsistent in part and latter repealed part of former.**

Every offense committed under Lever Act, § 15 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115⅛*l*), was punishable under the War Prohibition Act, and with a lesser penalty, and to that extent the two acts were inconsistent, and the latter act superseded or repealed section 15 of the former, and this would be also true if the latter act increased the penalty.

12. **Conspiracy ☞43 (6)—Count charging conspiracy to sell distilled spirits held good.**

A count charging that defendants conspired to use and sell for beverage purposes a large quantity of distilled spirits manufactured from food, etc., and did make sales between July 1, 1919, and November 15, 1919, *held* good as charging an offense under the War Prohibition Act.

13. **Criminal law ☞1090 (8)—Evidence not considered in absence of bill of exceptions.**

In the absence of a bill of exceptions properly in the record, federal Circuit Court of Appeals can know nothing as to what the evidence shows.

14. **Intoxicating liquors ☞134—Pure alcohol "distilled spirits" within War Prohibition Act; "beverage purposes."**

A sale of pure alcohol between July 1, 1919, and November 15, 1919, to be used in a saloon in the course of its business, would constitute the sale of "distilled spirits" for "beverage purposes" within the meaning of the War Prohibition Act.

[Ed.. Note.—For other definitions, see Words and Phrases, First and Second Series, Distilled Spirits; Second Series, For Beverage Purposes.]

15. **Indictment and information ☞108—Insertion of repealed statute held immaterial.**

An indictment charging the unlawful sale on November 15, 1919, of distilled spirits for beverage purposes "contrary to the form of the statute of the United States in such case made and provided (Act of August 10, 1917)" could state an offense under the War Prohibition Act, notwithstanding that the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛*l*–3115⅛r), which the district attorney had in mind and inserted in the parenthesis, was superseded and repealed.

16. **Indictment and information ☞108—Statute relied on need not be alleged.**

It is unnecessary to allege in an indictment the particular statute which has been violated.

17. **Indictment and information ☞119—Intoxicating liquors ☞215—Indictment held to allege violation of War Prohibition Act, though containing elements of offense under Lever Act.**

A count of an indictment charging that defendants did unlawfully, willfully, and knowingly sell for beverage purposes distilled spirits on November 15, 1919, stated an offense under the War Prohibition Act, although it contained the further allegation that such spirits were manufactured from certain food materials after September 9, 1917, the district attorney having the superseded Lever Act (Comp. St. 1918, Comp. St.

Ann. Supp. 1919, §§ 3115⅛c–3115⅛kk, 3115⅛l–3115⅛r) in mind, as the latter allegation should be regarded as surplusage.

18. **Indictment and information** ⊜⟹119—**Unnecessary averments disregarded.**

Unnecessary averments in an indictment may be disregarded as surplusage.

19. **Intoxicating liquors** ⊜⟹222—**Allegation that sale was for beverage purposes equivalent to allegation that it was not for export.**

An allegation in indictment that sale of distilled spirits was for beverage purposes was a sufficient allegation to charge a violation of the War Prohibition Act, without adding in terms that it was not for export.

20. **Criminal law** ⊜⟹1144(13, 14)—**Indictment and information** ⊜⟹202(5)—**Objection that indictment does not negative defense comes too late after verdict; presumed that jury was properly instructed under defective indictment and that evidence was sufficient.**

Objection after verdict in a prosecution under the War Prohibition Act that count did not negative the fact that sale of distilled spirits was not for export was too late, and it must be assumed that the jury was properly instructed, and that the evidence showed that the sale was not for export; no bill of exceptions being properly in the record.

21. **Internal revenue** ⊜⟹12—**No tax on liquor withdrawn for beverage purposes.**

There was no tax of $6.40 per gallon on liquor withdrawn "for beverage purposes" on November 12 and 15, 1919, under Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, § 5986e), at which time the War Prohibition Act prohibited sales for beverage purposes.

22. **Criminal law** ⊜⟹1144(13, 14)—**In absence of bill of exceptions, presumed that evidence was sufficient and instructions correct.**

In the absence of a bill of exceptions, a verdict of guilty on charge that distilled spirits were removed from a distillery warehouse on which tax had not been paid under Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, § 5986e), imposing a tax of $2.20 per gallon unless withdrawn for beverage purposes, in which case it was liable to pay a tax of $6.40 on each gallon, will not be disturbed, though at the time it was sold and withdrawn the War Prohibition Act was in effect and prohibited sale for beverage purposes, since it must be presumed that the court below correctly charged the jury that only the tax of $2.20 was payable on liquor withdrawn and sold at that time, and that there was evidence to support the verdict.

23. **Internal revenue** ⊜⟹12—**Tax on liquor held not remitted during war prohibition.**

Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, § 5986e), imposing a tax of $2.20 on each proof gallon of whisky withdrawn from distillery warehouse, unless withdrawn for beverage purposes, in which case it was liable to pay a tax of $6.40, did not intend to remit the tax of $2.20 while the War Prohibition Act was in force.

24. **Internal revenue** ⊜⟹39, 40—**Statute taxing liquors to be construed with statute declaring penalty for nonpayment.**

Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, § 5986e), imposing a tax on intoxicating liquors withdrawn from distillery warehouse, and Rev. St. § 3296 (Comp. St. § 6038), must be read together to determine whether removal of certain liquor from distillery warehouse on November 15, 1919, without payment of tax constituted a criminal offense.

25. **Internal revenue** ⊜⟹2—**Statute referred to in Volstead Act remained in force until going into effect of such act.**

Rev. St. 3296 (Comp. St. § 6038), under which penalty would be found for removal of intoxicating liquors from distillery warehouse without payment of tax provided by Act Feb. 24, 1919, § 600 (Comp. St. Ann.

Supp. 1919, § 5986e), was in force, so far as the Volstead Act was concerned, between the passage of such act and its going into effect.

26. **Internal revenue ☞2—War Prohibition Act did not repeal section necessary to prosecute for nonpayment of tax on liquor removed from warehouse.**

The War Prohibition Act did not repeal Rev. St. § 3296 (Comp. St. § 6038), which provided a penalty for removal of intoxicating liquors from distillery warehouse without payment of tax provided by Act Feb. 24, 1919, § 600 (Comp. St. Ann. Supp. 1919, § 5986e).

27. **Internal revenue ☞2—Wholesale dealer of intoxicating liquors held subject to special tax during war prohibition.**

The War Prohibition Act did not repeal Act Feb. 8, 1875, § 16 (Comp. St. § 5966), which required the payment of tax for carrying on the business of wholesale liquor dealer; it still being lawful to sell liquor for all but beverage purposes.

28. **Indictment and information ☞203—Reversal of conviction on counts based on repealed statute no reason for reversing conviction on valid counts.**

The fact that certain counts of an indictment are held bad because based upon a repealed or superseded statute is no reason for reversing conviction on good counts.

Manton, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Henry F. Maresca and others were convicted under an indictment charging them with a violation of the provisions of various acts of Congress respecting distilled spirits, and bring error. Reversed as to certain counts, and affirmed as to others.

See, also, 266 Fed. 713. Certiorari denied 256 U. S. —, 42 Sup. Ct. 183, 66 L. Ed. —.

This cause comes here on writ of error to the District Court for the Southern District of New York.

The defendants were tried upon an indictment which was filed on February 10, 1920, and which charged them with a violation of the provisions of various acts of Congress respecting distilled spirits. The trial was commenced on June 10, 1920. The jury returned the verdict on June 24, 1920. Sentences were imposed on July 2, 1920.

The Promotion Sales Company, Inc., the Herba Products Company, and the Gramatan Company, Inc., all named in the indictment, were corporations organized under the laws of the state of New York. The government entered a nolle prosequi and dismissed the indictment as to the Promotion Sales Company. That company appears to have been a holding company, and it acted as a sales agent for the other companies. The Herba Products Company manufactured flavoring extracts, mints, lozenges, and other varieties of candy. The Gramatan Company manufactured the Gramatan hair tonic and the Quo Vadis hair tonic. The defendant Maresca was the president and sole owner of the Herba Products Company. Rubino was the president of the Gramatan Company. De Angelis was the treasurer of the latter company as well as a stockholder therein. Lipari, who was jointly indicted, was a shipping clerk and was acquitted by the jury. The remaining defendants were convicted.

The indictment originally contained 11 counts, but counts 2, 4, 5, 7, and 8 were dismissed by the court before the case was submitted to the jury. The convictions were on each of the remaining counts, 1, 3, 6, 9, 10, and 11.

Count 1 of the indictment charged a conspiracy to sell distilled spirits for

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

beverage purposes in violation of the War Prohibition Act and of the Lever Act. Section 37, U. S. C. C.

Count 3 charged an unlawful sale for beverage purposes of distilled spirits made from food products after September 9, 1917. Act Aug. 10, 1917. This is the Lever Act, 40 St. at L. 276.

Count 6 charged the removal of distilled spirits on which the tax had not been paid to a place other than a distillery warehouse in violation of Rev. St. § 3296.

Count 9 charged a similar offense.

Count 10 charged the sale of distilled spirits for beverage purposes, and not for export. Act Nov. 21, 1918. This is the War Prohibition Act. 40 St. at L. 1045.

Count 11 charged the carrying on the business of a wholesale liquor dealer without having paid the special tax in violation of section 16, Act Feb. 8, 1875. 18 St. at L. 307.

No demurrer, motion to quash, or other plea was filed, and no motion for a bill of particulars was made. But after the jury had been impaneled and sworn counsel for defendants moved to dismiss the indictment on the ground that it failed to charge the commission of a crime. The motion to dismiss was granted as to counts hereinbefore specified and denied as to the others. The defendants were convicted on each of the counts not dismissed.

The sentences imposed were as follows:

Henry F. Maresca sentenced to two years and $5,000 on count 1; one year and $1,000 on counts 3 and 10; two years and $5,000 on count 6; two years and $5,000 on count 9. two years and $1,000 on count 11—sentence on each count to begin from the same date.

Giovanni Rubino sentenced to 20 months and $5.000 on count 1; one year and $1.000 on counts 3 and 10; 20 months and $5.000 on count 6; 20 months and $1,000 on count 11—sentence on each count to begin from the same date.

Charles De Angelis sentenced to 15 months and $5,000 on count 1; one year and $1.000 on counts 3 and 10; 15 months and $5,000 on count 6; 15 months and $5,000 on count 9; 15 months and $1,000 on count 11—sentence on each count to begin from the same date.

Gramatan Company, Inc., sentenced to pay a fine of $5,000 on count 1; $1,000 on counts 3 and 10; $5.000 on count 6; $5,000 on count 9; $1,000 on count 11.

Herba Products Company sentenced to pay a fine of $5,000 on count 1; $1.000 on counts 3 and 10; $5,000 on count 6; $5,000 on count 9; $1,000 on count 11.

Place of confinement to be in the United States Penitentiary, Atlanta, Ga. The total amount of the fines imposed aggregate $85,000.

John J. Curtin and Elijah N. Zoline, both of New York City, for plaintiffs in error.

Francis G. Caffey, U. S. Atty., of New York City (Ben A. Matthews, Sp. Asst. U. S. Atty., of New York City, of counsel), for the United States.

Before WARD, ROGERS, and MANTON, Circuit Judges.

ROGERS, Circuit Judge (after stating the facts as above). [1] This case is one of considerable importance not only to the defendants, because of the severe sentences imposed, but to the government, because of the questions raised as to the construction to be given to certain acts of Congress for the violation of which the defendants have been convicted. The District Judge who imposed the sentences was, of course, invested with sole discretion, within the limits fixed by the statutes, of determining the extent of the punishments to be inflicted, and in the discharge of that duty he was well aware that sentences

should be imposed which are sufficiently severe to cause the laws of the United States to be obeyed. The question which this court is to determine is as to the validity of the indictment and of the sentences imposed.

We are presented with a document marked "Bill of Exceptions." It appears to have been signed and filed on December 20, 1920. As the judgments of the court were entered on July 2, 1920, the term of the District Court expired with September 30, 1920, under rule 5, automatically extending the term 90 days after the entry of final judgment. Defendants rely on an oral statement, which is before us only because incorporated in the so-called bill of exceptions, which was made by the District Judge from the bench on July 2, 1920, and which was as follows:

"I will extend it [the term] until November 1st; and I am quite sure if it becomes necessary, I will have the power to grant an additional extension."

[2] No minute or docket entry was made of the remark, and no order was signed by the judge until November 3, 1920, when, over the government's objection, an order was signed purporting to extend the term to December 8th. This order was filed on November 4th, and on November 29th a further order again extending the term was signed extending the term to January 5, 1921. There is authority for holding that an oral statement extending the time for filing a bill of exceptions is not of any binding force unless entered in the docket. Barstow v. Marsh, 4 Gray (Mass.) 165; Doherty v. Lincoln, 114 Mass. 362; Klein v. State, 157 Ind. 146, 60 N. E. 1036. But for the purpose of the argument we will assume, without deciding, that the oral order extending the term to November 1st was valid. In that case the second order of November 3d, extending the term to December 8th would be invalid, as was the order of November 29th, as the term had expired when the extension on November 3d was granted. It is said, however, that the District Judge in his original and oral extension of the term said: "I will extend it until November 1st; that is four months." Where time is defined by a particular date as well as by the number of days, and the two are inconsistent, it is very doubtful at the best whether the number of days named can overcome the particular date specified. But if they be given controlling effect, and we do not decide that they are entitled to it, the term would be extended to and including November 2, 1920. Then, as November 2d, being election day, was a legal holiday, it is urged that this would give an additional day, and therefore made the order signed on Monday, November 3d, valid; counsel insisting that it is well settled that, if the last day for settling and filing a bill of exceptions falls on a Sunday or on a holiday, the bill may be settled on the following day. And our attention is called to the following cases: Bacon v. State, 22 Fla. 46; Harris v. Atlanta, 62 Ga. 290; Evans & Hollinger v. Chicago, etc., R. R. Co., 76 Mo. App. 468; Cash v. Penix, 11 Mo. App. 597; Enck v. Gerding, 63 Ohio St. 175, 57 N. E. 1083—in which it has been so decided.

In Siegelschiffer v. Penn Mutual Life Ins. Co., 248 Fed. 226, 160 C. C. A. 304, this court held, in computing the time within which an appeal or writ of error can be taken or sued out after entry of judgment, that if the last day of the six months' period falls on Sunday, the act cannot be lawfully done on Monday. In so holding we followed a like decision of the Circuit Court of Appeals in the Eighth Circuit (Johnson v. Meyers, 54 Fed. 417, 4 C. C. A. 399), and one by the Circuit Court of Appeals in the Ninth Circuit (Meyer v. Hot Springs Imp. Co., 169 Fed. 628, 95 C. C. A. 156).

[3] A bill of exceptions was unknown to the early common law. 4 Chitty, Gen. Pr. 2. It was introduced by the Statute of Westminster II (13 Edw. I) Stat. 1, c. 31, A. D. 1285. It is plainly common law in the United States, but in both countries has been held not to extend to criminal causes. Reg. v. Alleyne, 4 Ell. & B. 186; Vane's Case, 6 How. St. Tr. 119, 130, 131; Reg. v. Jelly, 10 Cox, Crim. Cas. 553; People v. Holbrook, 13 Johns. (N. Y.) 90; Ex Parte Barker, 7 Cow. (N. Y.) 143; Ned v. State, 7 Port. (Ala.) 187. And see Bishop's New Cr. Proced. (2d Ed.) § 1265. The right to such a bill in a criminal case in the federal courts is statutory. And, as we pointed out in Buessel v. United States, 258 Fed. 811, 816, 170 C. C. A. 105, when Congress authorized the proceedings in a criminal case to be reviewed upon a writ of error, it thereby sanctioned the use of a bill of exceptions in that connection, for a bill of exceptions is the method by which the proceedings at the trial which otherwise would not be in the record are made a part of it and so reviewed. And we also pointed out in the Buessel Case that bills of exceptions in the federal courts are not governed by the conformity statute, directing that the practice, pleadings, and forms and modes of proceeding in a District Court shall conform to those in the courts of the state in which the District Court sits.

[4] We see no reason why the rule this court applied in determining the time within which an appeal or a writ of error can be sued out should not be also applied in determining the time within which the bill of exceptions can be signed and filed. The right to the bill of exceptions, in a criminal case in the federal courts, like the right to the writ of error, comes from the statute, and not from any rule of the court, and we know of no reason why it is not governed by the same principles in ascertaining the time within which it is to be signed. If, when the last day falls on Sunday or on a legal holiday, the appeal or writ of error cannot be filed on the next day under the like circumstances, the bill of exceptions cannot be signed or filed on the next day. It must follow that, whether the court below extended the term, as the government contends, to November 1st, or whether it extended it four months and to November 2d, which fell on a legal holiday, in either event the subsequent extension of the term not made until the following day came too late, and the bill of exceptions thereafter signed must be disregarded. Blisse v. United States (C. C. A.) 263 Fed. 961; Anderson v. United States (C. C. A.) 269 Fed. 65.

[5] We may add, however, to what has already been said, that in 38 Cyc. 332, 333, it is correctly laid down as the general rule that,

. "Where an act is required to be done in any certain number of days after or before a fixed time, Sunday is to be included in computing the number of days, when it exceeds seven; if it is less than seven, Sunday must be excluded," and that the same rule applies where holidays intervene. So in Lewis' Sutherland on Statutory Construction (2d Ed.) vol. 1, § 188, p. 335, it is said that—

"In the absence of a positive written law excluding Sundays from a period of days prescribed for any purpose, they are counted, even though the period ends on Sundays. Where a period less than a week is prescribed by statute, it has sometimes been held that an intervening Sunday should not be counted, nor if it be the last day of the period." "This," the writer says, "appears to be the settled rule in Massachusetts. It is not universally adhered to as to periods of more than one or two days, subject to this qualification: Where the last day is Sunday, any act required by statute to be done within the period must be done before that day. For such acts the period practically ends on the preceding day."

The subject in connection with a bill of exceptions was carefully considered in American Tobacco Co. v. Strickling, 88 Md. 500, 41 Atl. 1083, 69 L. R. A. 909, it being held that, if the last day for signing a bill of exceptions falls on Sunday, it cannot be signed on Monday, the period for settling the bill in that state being in excess of seven days. The court declared:

"We can see no valid reason for excluding the last Sunday and including the others. The general rule, subject to but few exceptions, is that statutory time of over seven days cannot be extended because the last day falls on Sunday."

After stating the general rule to which attention has been already called the court added:

"There are but few exceptions to the general rule laid down above. There are cases which may seem to be [the contrary], but a careful examination of the most of them will show that, when Sundays are excluded from the computation of time of more than a week, it is because of the language of the statute, or because the days referred to are such as the courts find exclude Sundays."

See, also, Cartwright v. Liberty Telephone Co., 205 Mo. 126, 103 S. W. 982, 12 L. R. A. (N. S.) 1125, 12 Ann. Cas. 249; Geneva Cooperage Co. v. Brown, 124 Ky. 16, 98 S. W. 279, 124 Am. St. Rep. 388; Kelly v. Independent Pub. Co., 45 Mont. 127, 122 Pac. 735, 38 L. R. A. (N. S.) 1160, Ann. Cas. 1913D, 1063; Hanover Ins. Co. v. Shrader, 89 Tex. 35, 32 S. W. 872, 33 S. W. 112, 30 L. R. A. 498, 59 Am. St. Rep. 25; Cunningham v. Mahan, 112 Mass. 58; State v. Harris, 121 Mo. 445, 26 S. W. 558; State v. Seaton, 106 Mo. 198, 17 S. W. 169.

We are not at liberty, therefore, there being no bill of exceptions here, to consider the various assignments of error relating to the admission and rejection of evidence, and to comments which are alleged to have been improperly made by the District Judge during the trial, as well as those relating to alleged erroneous instructions given to the jury in the charge and the refusal to give instructions requested. Neither are we at liberty to inquire concerning an alleged unlawful search and seizure of certain books and papers or the character of the distilled spirits involved about which we can know absolutely nothing.

In passing upon the validity of the indictment and of the sentences, imposed we must consider certain acts of Congress. Those particularly to be considered are the Lever Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, §§ 3115⅛e–3115⅛kk, 3115⅛l–3115⅛r), the War Prohibition Act (40 Stat. 1045), and to some extent the National Prohibition Act (41 Stat. 305). It will be necessary also to refer in the course of this opinion to certain sections of the Revised Statutes dealing with revenue matters.

The Lever Act of August 10, 1917 (40 U. S. St. at L. c. 53, p. 276), otherwise known as the National Defense Act, became effective after September 8, 1917. It did not in express terms prohibit the sale of distilled spirits or the use of such spirits for beverage purposes. It was concerned with the production of such liquors from certain food materials. Section 15 of the act (section 3115⅛l) provided that after 30 days from the date of the approval of the act no foods, fruits, food materials, or feeds shall be used in the production of distilled spirits for beverage purposes. But it also provided that under such rules, regulations, and bonds as the President might prescribe such materials might be used in the production of distilled spirits exclusively for other than beverage purposes. And any person who willfully violated the provisions of the section or any rule or regulation made under it was subject to a fine not exceeding $5,000, or to imprisonment for not more than two years, or both. Thereafter, acting under section 15 of the act, the following regulations were promulgated:

"(3) The manufacture of distilled spirits from foods, fruits, food materials, or feeds for beverage purposes is prohibited after September 8, 1917.

"All persons are forbidden to use any distilled spirits manufactured after September 8, 1917, from foods, fruits, food materials, or feeds in manufacturing or preparing beverages or to sell any such spirits for beverage purposes. *  *  *"

[6] The regulation was promulgated by the Commissioner of Internal Revenue with the approval of the Secretary of the Treasury. Importance is attached, by counsel for defendants, to the fact that the President himself did not make or proclaim the regulation, and that it does not appear that he authorized either of the officials named to exercise the power delegated to him. The law is established that the President may exercise through the heads of departments the powers vested in him. He speaks and acts through the heads of the several departments in relation to subjects which appertain to their respective duties. Wilcox v. Jackson Ex dem. McConnel, 13 Pet. 498, 10 L. Ed. 264; Wolsey v. Chapman, 101 U. S. 755, 25 L. Ed. 915. And it must be presumed as matter of law that the Secretary of the Treasury, acting over his own signature, does so by direction of the President. In United States v. Fletcher, 148 U. S. 84, 13 Sup. Ct. 552, 37 L. Ed. 378, the President was required to act in the matter in controversy in a judicial capacity under the Articles of War in approving a report of a court-martial, and it appeared that the Secretary of War had acted in the matter over his own signature. The court held that it must be presumed that he acted by direction of the President in so doing. And in Porter v. Coble, 246 Fed. 244, 249, 158 C. C. A. 404, a postmaster who had been removed from office by the Postmaster General claimed

that the power of removal was in the President, and that there was nothing to show that the man had been removed by the President or that the Postmaster General had ever been authorized by the President to make the removal. It was held that it must be presumed that the Postmaster General in ordering the removal acted by direction of the President. So it may be that the act of the Secretary of the Treasury in promulgating the regulation was the act of the President in the matter under consideration.

The War Prohibition Act of November 21, 1918 (40 St. at L. c. 212, p. 1046), provided that after June 30, 1919, until the conclusion of the war and thereafter until the termination of demobilization, the date of which was to be determined and proclaimed by the President, it should be unlawful to sell for beverage purposes any distilled spirits, and that during said time no distilled spirits held in bond should be removed therefrom for beverage purposes except for export. And it provided that after May 1, 1919, no specified food products should be used in the manufacture or production of beer, wine, or other intoxicating malt or vinous liquor for beverage purposes. It also prohibited the importation into the United States of distilled, malt, vinous, or other intoxicating liquors during the continuance of the war and period of demobilization.

[7] The National Prohibition Act of October 28, 1919, otherwise known as the Volstead Act, 41 U. S. St. at L. p. 305, prohibited the manufacture and sale of intoxicating liquors. The violation of this act is not charged in the indictment, and we call attention to section 7 of title 1 of the act which declares that "none of the provisions of this act shall be construed to repeal any of the provisions of the War Prohibition Act." We may therefore disregard any suggestion that the Volstead Act operated in any way to modify or repeal the provisions of the War Prohibition Act. Titles 1 and 3 of the Volstead Act and certain sections of title 2 became effective on October 28, 1919, although certain other sections of title 2 did not go into effect until one year from and after the date when the Eighteenth Amendment of the Constitution went into effect, which was on January 29, 1920.

[8] Counsel for defendants claim that the Lever Act is unconstitutional. They found that claim upon the fact that the Supreme Court in United States v. L. Cohen Grocery Co., 255 U. S. 81, 41 Sup. Ct. 298, 65 L. Ed. ——, 14 A. L. R. 1045, held that section 4 of the act was invalid. That section is known as the price-fixing section. But that section is in no way involved in the case now before us; neither is any other section of the act except section 15. The two sections are absolutely independent of each other. And the law is well settled that, if the parts of a statute are wholly independent of each other, as they are here, that which is constitutional may stand, while that which is unconstitutional will alone be rejected. Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185; Spraigue v. Thompson, 118 U. S. 90, 95, 6 Sup. Ct. 988, 30 L. Ed. 115; Pollock v. Farmers' Loan & Trust Co., 158 U. S. 601, 15 Sup. Ct. 912, 39 L. Ed. 1108. We have no doubt that section 15 is constitutional.

[9] But counsel also urged upon us that section 15 was impliedly repealed and superseded by the War Prohibition Act and the National Prohibition Act. The question raised is important, as it is, of course, the law that, where a statute which defines a crime and provides the punishment to be imposed upon the offender is repealed before judgment, and there is no proper saving clause, the repeal constitutes a complete bar to all further proceedings. Wharton's Crim. Law (11th Ed.) vol. 1, § 413.

[10] Did the War Prohibition Act make a tabula rasa of the preexisting section 15 of the Lever Act? The repeal and the suspension of statutes are distinct matters. The suspension of a statute is limited in time, and is not a repeal which is unlimited in time. The suspension of a statute, like its repeal, may be express, as when declared in direct terms, or implied, when it is inferred from subsequent repugnant legislation. But suspension and repeal alike, when not express, but only implied, must be inferred from necessity. There must be such a conflict between the old and new statutes that the two cannot stand together. The intention to suspend or repeal will not be presumed unless the inconsistency is unavoidable and only to the extent of the repugnance. Lewis' Sutherland on Statutory Construction, vol. 1 (2d Ed.) § 247, p. 464.

Laws are presumed to be passed with deliberation, and it is a reasonable presumption that the lawmaking body does not intend to effect so important a measure as the repeal of a law without expressing an intention to do so. It is said in Maxwell on Interpretation of Statutes (6th Ed. London) 296, that—

"Such an interpretation [repeal by implication] is not to be adopted unless it be inevitable. Any reasonable construction which offers an escape from it is more likely to be in consonance with the real intention."

The two acts must stand in so far as they involve no inconsistency. And repeals by implication are not favored either in England (West Ham v. Fourth City Building Society, [1892] 1 Q. B. 654) or in the United States (United States v. Greathouse, 166 U. S. 601, 17 Sup. Ct. 701, 44 L. Ed. 1130). But in both countries alike it is well-established law that one statute may repeal or suspend another statute on the same subject, although it contains no words of express repeal. A later statute repeals by implication an earlier enactment when the two are clearly inconsistent with each other. United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153. And in Bishop on Statutory Crimes, § 160, it is correctly laid down that, where a newly enacted statute covers the whole ground occupied by a prior one or by the common law, it repeals such law by implication, if the two are irreconcilably in conflict.

It appears that the elements of the offense punishable under section 15 of the Lever Act and regulation 3 (assuming for the purposes of the argument that regulation 3 was promulgated in accordance with law) are (1) A sale of distilled spirits (2) for beverage purposes, (3) the distilled spirits having been manufactured from food materials subsequent to September 9, 1917. On the other hand, the elements of the offense punishable under the War Prohibition Act are (1) a sale of distilled spirits (2) for beverage purposes, and (3) not for export. Both

277 F.—47

acts prohibited the manufacture from certain food products of liquors for beverage purposes.

The punishment for a violation of the Lever Act was a possible $5,000 fine and imprisonment for two years; while under the War Prohibition Act it was a possible $1,000 fine and imprisonment for one year.

[11] Every offense committed under the Lever Act was punishable under the War Prohibition Act and with a lesser penalty. To that extent the two acts were inconsistent, and in our opinion the War Prohibition Act superseded or repealed section 15 of the Lever Act. There cannot be two different penalties for the same offense. The rule is well settled that, where a statute prohibits a particular act, and imposes a penalty for doing it, and a subsequent statute imposes a different penalty for the same offense, the latter statute operates by way of substitution and repeals the former, and this whether the penalty is increased or diminished. Rex v. Cator, 4 Burr, 2026, 98 Eng. Rep. 56; United States v. One Bay Horse, etc. (D. C.) 128 Fed. 207; State v. Whitworth, 8 Port. (Ala.) 434. Bishop on Statutory Crimes, § 168, and Maxwell on the Interpretation of Statutes (6th Ed. London, 1920) states, where the punishment or penalty imposed in an earlier statute is altered in degree, but not in kind, the provision in the later statute is considered as superseding the earlier one. There can be no difficulty, therefore, in holding that as to acts committed after the War Prohibition Act took effect the penalty imposed for an act which violated both statutes could only be imposed under the provisions of the later act.

That the War Prohibition Act was constitutional when enacted was decided in Hamilton v. Kentucky Distilleries Co., 251 U. S. 146, 40 Sup. Ct. 106, 64 L. Ed. 194. That it was not repealed by the National Prohibition Act we have already pointed out. And that it was not repealed by the Eighteenth Amendment was decided likewise in Hamilton v. Kentucky Distilleries Co., supra. By that amendment it was expressly provided that the prohibition thereby imposed was to become effective after one year from its ratification, and ratification was proclaimed on January 29, 1919. 40 Stat. 1941. The contention was that in postponing the effective date of prohibition the amendment impliedly guaranteed to manufacturers and dealers in intoxicating liquors a year of grace and impliedly removed the existing restriction imposed by the War-Time Prohibition Act. The Supreme Court, however, held the claim untenable.

The effect of these various acts in working an implied repeal of certain revenue legislation of the government will be considered in a subsequent portion of the opinion.

We come now to a consideration of the indictment and to the action of the court in imposing sentence thereunder.

[12] The first count charged that the defendants conspired and agreed together to violate section 15 of the act of Congress of August 10, 1917, known as the Lever Act, and the act of November 21, 1918, known as the War Prohibition Act, and the rules and regulations made thereunder, and that they conspired to use and sell for beverage pur-

poses a large quantity of distilled spirits manufactured from foods, fruits, food materials and feeds after September 9, 1917, and to sell for beverage purposes, and not for export, large quantities of distilled spirits, and that it was a part of the conspiracy that the defendants should purchase such distilled spirits for the ostensible purpose of using it as an ingredient in the manufacture of hair tonic and flavoring extracts, but with the true object and purpose of using and selling such distilled spirits for beverage purposes. Six overt acts are alleged and they can be found in the margin.[1] The dates of the alleged overt acts are laid between July 1, 1919, and November 15, 1919, and it is to be observed that all the days on which the overt acts occurred were after the date when the War Prohibition Act went into effect, and made it unlawful to sell for beverage purposes any distilled spirits or to remove any such spirits from bond for beverage purposes except for export. And the act which the count alleges the defendants conspired to commit, "viz. to sell for beverage purposes, and not for export," distilled spirits, constituted a plain violation of the War Prohibition Act, and the count must be held good.

[1] "(1) And to effect the objects of the said conspiracy, Giovanni Rubino, between the date of July 1, 1919. and November 15, 1919, at the Southern district of New York and within the jurisdiction of this court, did sign applications for permission to withdraw 254 barrels containing 24,-106.96 proof gallons of distilled spirits, for sale and use for other than beverage purposes.

"(2) And further to effect the objects of the said conspiracy, the Gramatan Company, Inc., between the date of July 1, 1919, and November 15, 1919, at the Southern district of New York and within the jurisdiction of this court, did receive 254 barrels containing 24,106.96 proof gallons of distilled spirits.

"(3) And further to effect the objects of the said conspiracy, Giovanni Rubino, on November 14, 1919, at the Southern district of New York and within the jurisdiction of this court, did sign an application for permission to withdraw from the American Distributing Company, Inc., wholesale dealers in nonbeverage alcohol, 10 barrels of distilled spirits.

"(4) And further to effect the objects of the said conspiracy, the Gramatan Company, Inc., and Louis Lipari, on November 14, 1919, at the Southern district of New York and within the jurisdiction of this court, received 10 barrels of distilled spirits.

"(5) And further to effect the objects of the said conspiracy, Louis Lipari, on November 14, 1919, at the Southern district of New York, and within the jurisdiction of this court, did deliver 5 barrels of distilled spirits, to a person whose name is to the grand jurors unknown.

"(6) And further to effect the objects of the said conspiracy, Giovanni Rubino, on November 15, 1919, at the Southern district of New York and within the jurisdiction of this court, did sell for cash to a person whose name is to the grand jurors unknown 1,000 gallons of distilled spirits designated as Quo Vadis, 1,000 gallons of distilled spirits designated as essence of peppermint, 500 gallons of distilled spirits designated as essence of wintergreen, and 500 gallons of distilled spirits designated as essence of clove, and did then and there cause an entry to be made in the books of the Promotion Sales Company, Inc., indicating sales for cash of 1,000 gallons of Quo Vadis at $4,000. 1,000 gallons of essence of peppermint at $16,000, 500 gallons of essence of wintergreen at $8,000, and 500 gallons of essence of clove at $8,000—

"Against the peace of the United States and their dignity and contrary to the form of the statute of the United States in such case made and provided (section 37, U. S. C. C.)."

[13, 14] But it is said that the term "distilled spirits," used in count 1, may mean either pure alcohol or anything which has been prepared as a beverage or by way of mixture making it palatable for beverage purposes. And we are told that the War Prohibition Act, the National Prohibition Act, and the Eighteenth Amendment all aim only at the sale of such "distilled spirits" as are fit for human consumption as a beverage. Then we are informed that the evidence shows conclusively that the distilled spirits sold to the defendants were of nonbeverage quality, being pure alcohol which could not be drunk; that therefore the defendants neither bought nor sold "distilled spirits" within the new meaning of that term, that is to say "as a beverage or for beverage purposes" within the meaning of the War Prohibition Act. To all of this it is enough to say, there being no bill of exceptions in the case, that this court knows nothing and can know nothing as to what the evidence shows was the character of the "distilled spirits" which the defendants bought or sold. The count uses the language of the War Prohibition Act which declares it "shall be unlawful to sell for beverage purposes any distilled spirits." And it declares that any person who violates any of the provisions of the act shall be punished in the manner specified therein. We may be permitted to add, although the question is not before us for decision, that even if it properly appeared to this court that the defendants bought and sold pure alcohol and delivered it to a saloon to be used by it in the course of its business, the majority, as at present informed, would have no difficulty in holding that the thing sold was "distilled spirits," and that it was sold for "beverage purposes" within the meaning of the Prohibition Act. To hold otherwise would seem to us to violate the plain intention of the act and to constitute a total disregard of the language used.

The sentences imposed under this count were imposed under the provisions of section 37 of the Criminal Code (Comp. St. § 10201), which authorizes each of the parties found guilty of conspiracy to be fined not more than $10,000, or imprisoned not more than two years, or both. In this case the sentences must be held good, not being in excess of the statutory limit.

The second count was dismissed by the court before the case was submitted to the jury, and therefore is not now before us.

[15, 16] The third and tenth counts may be considered together as each charges an unlawful sale of distilled spirits for beverage purposes. Count 3 charged that on November 15, 1919, the defendants did unlawfully, willfully, and knowingly sell for beverage purposes a quantity of distilled spirits, to wit, 24,106.96 gallons, and the said distilled spirits were manufactured from foods, fruits, food materials, and feeds after September 9, 1917, as the defendants then and there well knew, against the peace of the United States and their dignity and contrary to the form of the statute of the United States in such case made and provided (Act Aug. 10, 1917). It is evident that the pleader in drawing count 3 had the Lever Act in mind. For reasons already stated, the Lever Act was not in existence on November 15, 1919, having been superseded by the War Prohibition Act. But in the opinion of the court the count is not bad because of the words at the

end of the count "(Act of August 10, 1917)." The count itself does not expressly allege that the unlawful sale was made in violation of the Lever Act, or of the "Act of August 10, 1917."

In Williams v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 94 (42 L. Ed. 509), the court declared that it was wholly immaterial what statute was in the mind of the district attorney when he drew the indictment, if the charges made were embraced by some statute in force; that the indorsement on the margin of the indictment constituted no part of the indictment and did not add to or weaken the legal force of its averments.

"We must," said the court, "look to the indictment itself, and, if it properly charges an offense under the laws of the United States, that is sufficient to sustain it, although the representative of the United States may have supposed that the offense charged was covered by a different statute."

As was said in United States v. Nixon, 235 U. S. 231, 235, 35 Sup. Ct. 49, 50 (59 L. Ed. 207), the important fact is that the indictment alleges that an act was done contrary to the form of the statute in such case made and provided, and "what was that statute and on what statute the indictment was founded was to be determined as a matter of law from the facts therein charged." In the Nixon Case, as in the Williams Case, the court held the reference to the statute was no part of the indictment. See, to the same effect, Wechsler v. United States, 158 Fed. 579, 86 C. C. A. 37, decided by this court; United States v. Wood (D. C.) 168 Fed. 438; United States v. Freidericks (D. C.) 273 Fed. 188. In the Nixon Case the entries on the back and in the caption of the indictment described it as being for violation of a certain statute, which was inapplicable, and the court declared that this did not invalidate the indictment, but that it was for the court to say whether there was any statute in existence which made the facts charged a crime; "an indictment must set out facts and not the law," and the indorsements constituted no part of the indictment. In the absence of an allegation in the count that the unlawful act charged constituted a violation of a specific statute, the mere indorsement in parentheses at the end of the count is in the opinion of the majority of the court of no greater significance than the same words would have if they had been indorsed on the margin of the indictment or on the back of the indictment or in the caption of the indictment. In all these cases the indorsement indicates the intention of the pleader to rest the indictment upon the statute named, but that intention cannot nullify the indictment or in any wise conclude the government if there is some other statute which can sustain it. For many years it has been the practice in the Southern district in drawing indictments to do what was done in drawing this count, but the practice is an unfortunate one, as it is quite unnecessary to allege the particular statute which has been violated.

[17] The essential facts alleged in count 3, viz. that the defendants did unlawfully, willfully and knowingly sell for beverage purposes distilled spirits on November 15, 1919, is the allegation of an act made criminal by the War Prohibition Act, which was in force on that date. Therefore the count is good. The allegation that the distilled spirits were manufactured from certain food materials after Sep-

tember 9, 1917, is to be regarded, in the opinion of the majority, as mere surplusage; it being immaterial under the War Prohibition Act when the spirits were distilled. The language of the War Prohibition Act is:

"That after June 30, 1919, until the conclusion of the present war and thereafter until the termination of demobilization * * * it shall be unlawful to sell for beverage purposes any distilled spirits. * * *"

[18-20] The law is well established that unnecessary averments in an indictment may be disregarded as surplusage. Wharton's Cr. Procedure, vol. 1 (10th Ed.) § 200. And if it be said that under the War Prohibition Act a sale might be made for export and that the count does not negative the fact that the sale was not for export, we think the allegation that the sale was for beverage purposes is in itself a sufficient allegation, without adding the words that it was not for export. But, if mistaken in this, the objection comes too late after verdict, and we should assume that the jury was properly instructed, and that the evidence showed the sale was not for export. The sale for beverage purposes on the day named was a crime under the laws of the United States, being prohibited by the War Prohibition Act, and defendants could not have been misled or prejudiced in any way by the language of the count.

One of the members of the court, however, holds that the third count is expressly under the Lever Act, so that the allegation that the distilled spirits were made from food products after September 9, 1917, is material and necessary, and that it was to this charge that the defendants pleaded not guilty, and he thinks the finding that the Lever Act is impliedly repealed by the War Prohibition Act is no ground for treating the count as filed under the latter act. He thinks that there was no mistake or misunderstanding upon the part of any one, and the defendants have prevailed upon the precise issue proposed by the government. Another member of the court, while thinking the count good, thinks the conviction under it bad. The writer, however, thinks both the count and the sentence under it good, but the majority think the sentence under the count bad.

Count 10 charges a similar unlawful sale, alleging, however, that it occurred on November 15, 1919, and that it was not for export, and that the quantity sold was 24,106.96 proof gallons. At the end of the count occur the words "(Act of November 21, 1918)." There can be no doubt as to the validity of count 10, and, as it charged an unlawful sale, and as the sentences imposed under both counts were single and did not exceed the punishment authorized under the War Prohibition Act, the sentence imposed under count 10 is affirmed, while that imposed under count 3 is reversed.

Counts 4 and 5 having been dismissed by the District Judge, are not before us.

[21, 22] The sixth and ninth counts both involved an alleged violation of the same sections of the revenue laws, and they may therefore be considered together. Each of the counts charges that the defendants did unlawfully, willfully, knowingly, and feloniously remove and aid and abet in the removal of distilled spirits on which

the tax had not been paid to a place other than the distillery warehouse provided by law, contrary to section 3296 of the Revised Statutes of the United States (Comp. St. § 6038), which reads as follows:

"Whenever any person removes, or aids or abets in the removal of any distilled spirits on which the tax has not been paid, to a place other than the distillery warehouse provided by law, or conceals or aids in the concealment of any spirits so removed, or removes, or aids or abets in the removal of any distilled spirits from any distillery warehouse or other warehouse for distilled spirits authorized by law, in any manner other than is provided by law, or conceals or aids in the concealment of any spirits so removed he shall be liable to a penalty of double the tax imposed on such distilled spirits so removed or concealed, and shall be fined not less than two hundred dollars nor more than five thousand dollars, and imprisoned not less than three months nor more than three years."

That section, if in force on the dates specified in the counts, made it a criminal offense for any one to remove distilled spirits on which the tax had not been paid. Act Feb. 24, 1919, § 600 (40 St. at L. c. 10, p. 1105 [Comp. St. Ann. Supp. 1919, § 5986e]), imposed a tax of $2.20 on each proof gallon withdrawn unless withdrawn for beverage purposes, in which case it was liable to pay a tax of $6.40 on each gallon. The only difference in counts 6 and 9 is that the former count charges the removal on November 15, 1919, of 960.47 proof gallons, while the latter charges the removal on November 12, 1919, of 971.08 proof gallons. To constitute the crime charged and to sustain the conviction under these counts it must appear that on the dates named the law imposed a tax on the liquors withdrawn which had not been paid. On the dates named in the counts the act of February 24, 1919, was in force. Subdivision (a) of section 600 imposed a tax of $6.40 on each proof gallon of distilled spirits "if withdrawn for beverage purposes," but subdivision (b) of the same section (section 5986f) provided that the tax imposed by subdivision (a) on distilled spirits intended for beverage purposes should not be due or payable on such spirits while stored in any distillery, bonded warehouse, or special or general bonded warehouse, and which, pursuant to any act of Congress or proclamation of the President of the United States, "cannot be lawfully sold or removed from any such warehouse during the period of prohibition fixed by such act or proclamation." As on November 12 and November 15, 1919, it was not lawful to sell for beverage purposes, such sales being absolutely prohibited by the War Prohibition Act, which also declared that no distilled spirits held in bond should be removed therefrom for beverage purposes, there was no tax then to be paid on liquors withdrawn "for beverage purposes" without payment of the tax. It does not therefore conclusively establish the invalidity of the counts if it should be conceded, and we do concede it, that no tax was at that time payable on liquors withdrawn "for beverage purposes." And, as said, that was not the charge contained in the counts. The charge was that liquor had been withdrawn without payment of the tax, without specifying the purpose for which the withdrawal was made. And, as the liquor was subject to a tax of $2.20 on each proof gallon withdrawn during the period specified (when not withdrawn for beverage purposes), the counts

were not necessarily bad, and after verdict and in the absence of a bill of exceptions we think the verdict of guilty on these counts might be sustained under section 3296, if in force. It might be assumed in that situation that the court below correctly charged the jury on the subject, and that there was evidence to support the verdict. See Wilson v. United States, decided by this court (C. C. A.) 275 Fed. 307.

[23, 24] That the act of February 24, 1919, imposes a tax of $2.20 on all distilled spirits not excepted by the language, and that it was not intended that that particular tax should be remitted while the War Prohibition Act was in force, is made about as plain as Congress could make it; for, when it imposed by the act of February 24th two kinds of taxes and declared that one of them, the tax imposed on distilled spirits intended for beverage purposes, should not be due or payable during the period of prohibition, and failed to make a like declaration as to the other, it left no reason for arguing that it intended that both taxes should be suspended during the period of prohibition. "Expressio unius est exclusio alterius." Moreover, it is to be noted that the act of February 24th was passed, not prior to but the year after the War Prohibition Act was adopted. At the time named in the counts there was a tax due. The real question is whether section 3296 was in force at the time involved and made the acts complained of in the counts a crime, or whether it had been impliedly repealed. Before considering that question attention may be called to the fact that it may be said that, while the act of February 24th provided for a tax of $2.20 per gallon, the tax is a debt and involves nothing more, as the act provides no penalty. But the penalty was already provided in section 3296, which, if not repealed, was existing law, and therefore did not need to be re-enacted. The act of February 24th and section 3296 of the Revised Statutes, if unrepealed, must be read together. If section 3296 remains unrepealed, it declares the penalty to be imposed upon any person violating its provision.

[25] We come then to the question whether section 3296 was in force at the time when the defendants are charged in counts 6 and 9 with having committed the offense named therein. In Reed v. Thurmond (C. C. A.) 269 Fed. 252 (November, 1920), the Circuit Court of Appeals for the Fourth Circuit had a case before it involving section 3296, and that court held, reversing the court below on a ground not advanced or considered therein, that the Volstead Act had repealed that section.

"To our minds," said the court, "the Volstead Act, in its entire scope and purpose, is plainly inconsistent with the scheme of revenue protection embodied in the Revised Statutes and in the section under review."

The court declared that offenses committed under the Volstead Act and since it went into effect are punishable only under that act. Volstead Act, tit. 2, § 3, declared that no person on or after the date when the Eighteenth Amendment goes into effect should manufacture, sell, etc., except as authorized by the act. And as the amendment referred to did not go into effect until January 29, 1920, one year after ratification was announced, the Volstead Act had not repealed section

3296 on the dates named in counts 6 and 9. It is also to be observed that Reed v. Thurmond, supra, was decided a year and a half before the Supreme Court decided United States v. Yuginovich, 256 U. S. ——, 41 Sup. Ct. 551, 65 L. Ed. ——, in which case that court used the following language:

"That Congress may under the broad authority of the taxing power tax intoxicating liquors notwithstanding their production is prohibited and punished we have no question."

Then it said:

"We agree with the court below that, while Congress manifested an intention to tax liquors illegally as well as those legally produced, which was within its constitutional power, it did not intend to preserve the old penalties prescribed in section 3257 in addition to the specific provision * * * made in the Volstead Act."

What the defendants in that case were charged with was that they unlawfully engaged in the business of distillers without paying the tax imposed for engaging in that business. And the Supreme Court said it did not think Congress intended to preserve the penalties provided in section 3257 in addition to those provided in the Volstead Act.

The question presented in the case now before us is a different one. The Volstead Act is not before us so far as counts 6 and 9 are concerned for the reason that the act complained of in those counts was committed in November, 1919, and prohibition under Volstead Act, tit. 2, § 3, did not become effective, as declared expressly therein, until one year after the ratification of the Eighteenth Amendment, or on January 29, 1920. Moreover, section 35 of title 2 of the Volstead Act declared:

"Nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing law."

And this section also did not become effective until January 29, 1920. As the Volstead Act was not in effect on the dates charged in the counts, it is not important as respects these counts that it was in effect and even had repealed section 3296 prior to the trial and sentences of the defendants; the right to impose sentence for offenses previously committed having been saved by the provision in section 35 of title 2 of the act above quoted.

[26] The question before us then is whether we can say that Congress by the War Prohibition Act intended a repeal of section 3296. It is to be observed that the War Prohibition Act was a far less comprehensive act than the Volstead Act, and was intended to be a temporary, and not a permanent, statute, and it by no means follows that because the Volstead Act repealed section 3257 the War Prohibition Act repealed section 3296. And this court thinks it did not. If Congress intended by the War Prohibition Act to repeal section 3296, it reversed a policy which had been in effect since 1868 (15 Stat. 140), and remitted a criminal liability of a fine of not more than $5,000 and of imprisonment for not more than 3 years, retaining simply the civil liability in an action of debt for the recovery of the amount of the unpaid tax. We find it difficult to believe that a Congress which clear-

ly indicated its determination to suppress by the most severe measures what it regarded as the evil and harmful traffic in distilled spirits when used for beverage purposes intended to relieve all persons who sought to evade the payment of the tax from a criminal liability which had been imposed by law on such offenders during a period of 50 years. It may have intended that the act should have that effect, but. if it did have that intention, the court fails to discover wherein and whereby it indicated it.

Our attention has been called to a number of cases in which it has been decided that the Volstead Act has worked an implied repeal of certain revenue legislation. But the court is not aware of a single decision which has gone as far as we are asked to go in this case and hold that the War Prohibition Act repealed section 3296.[2] And in United States v. Turner (D. C.) 266 Fed. 248, in an opinion in which the subject was reviewed at some length, which cannot be said of most of the contrary decisions, the court passed on section 3296 and held that the Volstead Act itself did not repeal it. In the recent case of United States v. Fredericks (D. C.) 273 Fed. 188, a similar conclusion was reached by Judge Rellstab in a very carefully considered and able opinion.

This court holds that section 3296 was not repealed by the War Prohibition Act, and that counts 6 and 9 are good and the sentences imposed thereunder are valid.

The eleventh count, like the sixth and ninth counts, previously considered, related to a violation of the Revenue Laws, but to a different section of those laws. It charged that on November 15, 1919, the defendants carried on the business of a wholesale liquor dealer without having paid the special tax as required by law. At the end of this count was indorsed "(section 3281, U. S. R. S.)." Section 3281 (Comp. St. § 6021) prohibited the carrying on of the business of a distiller without payment of the special tax required by law. The applicable statute would have been more correctly cited as section 16 of the act of February 8, 1875 (Comp. St. § 5966) which was supplementary to R. S. 3281. So long as the law was in force one could not engage in the business of a wholesale liquor dealer without taking out a license and paying a special tax of $100, and, if he engaged in the business without doing so, he committed an offense for which he could be fined not less than $100 nor more than $5,000, and be imprisoned not less than 30 days nor more than 2 years. The mistaken reference to the section of the Revised Statutes indorsed at the end of the count cannot affect its validity for reasons heretofore stated in connection

[2] The following are cases in which the Volstead Act has been held to repeal certain revenue legislation: United States v. Windham (D. C.) 264 Fed. 376; United States v. Puhac (D. C.) 268 Fed. 392; United States v. Stafoff (D. C.) 268 Fed. 417; The Goodhope (D. C.) 268 Fed. 694; United States v. Fortman (D. C.) 268 Fed. 873. And in the following cases it was held not to repeal it: United States v. Sohm (D. C.) 265 Fed. 910; United States v. One Essex Touring Automobile (D. C.) 266 Fed. 138; United States v. Turner (D. C.) 266 Fed. 249; United States v. Farhart (D. C.) 269 Fed. 33; Violette v. Walsh (D. C.) 272 Fed. 1014.

with what was said concerning a similar question under the third count, and which the court deems applicable to the eleventh count.

[27] The question presented under count eleven relates to a different section of the revenue legislation from that discussed under counts 6 and 9. Under counts 6 and 9 the tax involved is on all distilled spirits, and the business of manufacturing all spirits is not unlawful. Under count 11 the tax involved relates to the business of a wholesale liquor dealer, and the business of a wholesale liquor dealer is not unlawful under the War Prohibition Act, which only prohibits sales for beverage purposes, but does not prohibit sales for other purposes. This court therefore holds count 11 good, and not impliedly superseded by the War Prohibition Act. At the time laid in the count, November 15, 1919, the War Prohibition Act was in force. Under that act the retail and wholesale business in distilled spirits was not absolutely prohibited, although it was made "unlawful to sell for beverage purposes any distilled spirits," and the Act made also unlawful "the manufacture or production" of intoxicating liquors for beverage purposes. It might be argued that, if Congress had made the whole business of selling distilled spirits unlawful, it could not at the same time have intended to keep in force a law which declared that one should not engage in the business thus made unlawful without having paid a special tax. To prohibit absolutely the manufacture and sale and at the same time require one to pay a special tax for engaging in the prohibited business might be thought to be inconsistent. In United States v. Ketchum (C. C. A.) 270 Fed. 416, the Court of Appeals for the Eighth Circuit said:

"To absolutely prohibit the manufacture and sale of spirituous liquors, and then to send persons engaged in such business to the penitentiary because they had not paid a tax on the spirits distilled, involves such a contradiction of purpose that there would seem to be no escape from the conclusion that the law requiring the payment of a tax is inconsistent beyond all reasonable doubt with the act."

In the Ketchum Case the court was referring to the National Prohibition Act. And in United States v. Yuginovich, 256 U. S. ——, 41 Sup. Ct. 551, 65 L. Ed. ——, decided on June 1, 1921, the defendants were charged, among other things, with an attempt to defraud the United States of the tax on distilled spirits under section 3257, and with a violation of section 3281 of the Revised Statutes in carrying on the business of a distiller without giving the required bond. The Supreme Court held the provisions cited had been repealed by implication. But, granting that the National Prohibition Act worked a repeal of the provision in section 3281 which made it an offense to carry on the business of distilling without giving a bond, it does not follow that the War Prohibition Act repealed section 16 of the act of February 8, 1875, which required the payment of a tax for carrying on the business of a wholesale liquor dealer, upon which count 11 of the indictment is based.

The National Prohibition Act is entitled:

"An act to prohibit intoxicating beverages, and to regulate the manufacture, production, use, and sale of high-proof spirits for other than beverage

purposes, and to insure an ample supply of alcohol and promote its use in scientific research and in the develpment of fuel, dye, and other lawful industries."

As its title indicates, it is a comprehensive statute relating to the entire subject of distilled spirits. It embraces three titles and as printed covers some 18 pages of the United States Statutes at Large. The War Prohibition Act, on the other hand, is entitled:

"An act to enable the Secretary of Agriculture to carry out, during the fiscal year ending June 30, 1919, the purposes of the act entitled 'An act to provide further for the national security and defense by stimulating agriculture and facilitating the distribution of agricultural products' and for other purposes."

The part relating to prohibition of the liquor traffic is merely a part of the first section of that act, and covers a single page of the Statutes at Large. As the title of the act indicates, and a comparison with the National Prohibition Act makes clear, it is not a comprehensive statute dealing with the entire subject of distilled spirits. The War Prohibition Act in itself simply prohibited the manufacture and sale of distilled spirits for beverage purposes. It provided, however, that the Commissioner of Internal Revenue might prescribe rules and regulations subject to the approval of the Secretary of the Treasury in regard to the manufacture and sale of distilled spirits and their removal when held in bond after June 3, 1919, for other than beverage purposes; also in regard to the manufacture, sale, and distribution of wine for sacramental, medicinal, or other than beverage uses. It seems to us that the act itself, prohibiting merely the sale for beverage purposes, cannot be regarded as working an implied repeal of prior legislation requiring a tax to be paid by the wholesalers; it still being lawful to sell for all purposes except for beverage purposes. If the Commissioner of Internal Revenue, with the approval of the Secretary of the Treasury, prescribed under the act any valid rules and regulations which deprived the manufacturers or wholesalers of the right to sell for other than beverage purposes, our attention has not been called to the fact.

Whether the National Prohibition Act is to be construed as an implied repeal of the revenue provision involved is not before us in this case. If that act works an implied repeal, about which we express no opinion, it is because of certain sections of the act in title 2, which provisions did not become operative until after the date when the Eighteenth Amendment went into effect. But the act complained of in count 11, which is alleged to have been committed on November 15, 1919, which was prior to the date when that amendment took effect, is not affected by the National Prohibition Act; it being expressly provided therein, as before stated, that it should not "relieve any one from any liability, civil or criminal, heretofore or hereafter incurred under existing law."

[28] The fact that certain of the counts have been held bad because based upon a repealed or superseded statute can constitute no reason for reversing the judgments as to the valid counts. Selvester v. United States, 170 U. S. 262, 267, 18 Sup. Ct. 580, 42 L. Ed. 1029; Williams

v. United States, 168 U. S. 382, 389, 18 Sup. Ct. 92, 42 L. Ed. 509; Wechsler v. United States, 158 Fed. 579, 86 C. C. A. 37.

Judgments of conviction and sentences under the first, sixth, ninth, tenth, and eleventh counts are affirmed.

Judgments and sentences under the third count are reversed.

MANTON, Circuit Judge (dissenting). The indictment here has eleven counts. Counts 2, 4, 5, 7, and 8 were dismissed by the court, and the defendants were each convicted upon the remaining counts, Nos. 1, 3, 6, 9, 10, and 11. Count 1 charges a conspiracy to sell distilled spirits for beverage purposes in violation of the War Prohibition and the Lever Acts. Count 3 is for a violation of section 15 of the act of Congress of August 10, 1917 (Lever Act), for the selling, for beverage purposes, of distilled spirits made from food products. The sixth count is for violation of section 3296 of the Revised Statutes (title 37), removal of distilled spirits on which the tax had not been paid from a place other than a distillery warehouse. The ninth count is for a similar offense, except as to another quantity of distilled spirits. The tenth count is a violation of the act of Congress of November 21, 1918 (War Prohibition Act, 40 Stat. 1045), for selling distilled spirits for beverage purposes, and not for export. And the eleventh count is for violation of section 16 of the act of February 8, 1875 (18 Stat. 307), for carrying on the business of a wholesale liquor dealer without having paid the special tax. The evidence discloses that the distilled spirits was alcohol of 190 proof. The individual plaintiffs in error were each sentenced to various terms under these convictions, and it was ordered that the sentences run concurrently. The plaintiff in error Maresca was the president and sole owner of the Herba Products Company, Rubino was the president of the Gramatan Company, Inc., and De Angelis was a stockholder of the Gramatan Company, Inc., and its treasurer. The Herba Products Company was a domestic corporation, as was the Gramatan Company, Inc., and the Promotion Sales Company. It was through the medium of these corporations that the individual plaintiffs in error conducted a business for the manufacture and sale of flavoring extracts, hair tonic, and candy. Their factory was located at No. 138 Prince street, in the city of New York. The office of the Promotion Sales Company was at No. 1482 Broadway. On the door of the office there were names of each of the corporate plaintiffs in error. Concededly they carried on a legitimate business of manufacturing hair tonic. It appears that alcohol was used in the manufacture of the Gramatan hair tonic; the formula calling for 5 per cent. alcohol. This was their sole requirement for alcohol. A permit was granted to the Gramatan Company, Inc., for the withdrawal of alcohol, pursuant to the acts of Congress on September 2, 1919, for use only in making hair tonic and flavoring extracts. A bond was given in a sum inadequate in amount for the withdrawals of the barrels of alcohol which the record shows the corporate companies used during the period. On November 14, 1919, the plaintiffs in error were detected delivering two barrels of 190 proof alcohol at a saloon at No. 424 Mulberry street, Newark, N. J., with

three additional barrels on the truck. The government officers seized the alcohol and the truck. Investigation revealed that the tax paid was at the rate of $2.20 per gallon, the nonbeverage rate, and that the beverage rate was $4.20. The identification marks on the barrels, including the serial numbers, the nonbeverage tax stamps, and the nonbeverage caution label were found to have been removed by green paint. It was possible to trace these five barrels as part of the lot purchased by one of the plaintiffs in error on behalf of the Gramatan Company, Inc., from wholesale liquor dealers in New York City. There is other evidence, of a circumstantial character, which traced the ownership of the alcohol to the plaintiffs in error, and the sale, thereof by the plaintiffs in error. The government's claim is that the permit was obtained by the plaintiffs in error for use by the Gramatan Company Inc., and used by that company, not for withdrawing alcohol for the manufacture of hair tonic and flavoring extracts, but, in point of fact, for the purpose of disposing of the alcohol for beverage purposes. The books of the Gramatan Company, Inc., show large withdrawals of barrels of alcohol between the period of August and November 17, 1919, and the claim is that the alcohol purchased and withdrawn on these permits was not necessary to the manufacture of hair tonic containing 5 per cent. alcohol, nor, indeed, could it have been used by the plaintiffs in error in their legitimate business.

After the conviction the plaintiffs in error sued out this writ of error. This bill of exceptions, which was signed and filed on December 20, 1920, is attacked by the defendant in error for the reason that it was not prepared and filed within the term. The judgment of the court was entered on July 2, 1920. The term of the District Court expired September 30, 1920, 90 days after the entry of final judgment. On July 2, 1920, after sentence was imposed, the court said:

"I will extend it (the term) until November 1st; that is four months, and I am quite sure, if it becomes necessary, I will have the power to grant an additional extension."

No minute or docket entry was made of the judge's remarks, and no order was ever signed until November 3, 1920, when, over the government's objection, an order was signed extending the term until December 8th. This order was procured on an affidavit which was filed November 3d, in which affidavit it was stated that the term had been extended until November 3d. The order was filed November 4th. On November 29, 1920, a further order extending the term was granted. The contention is that the term expired September 30th pursuant to rule 5, and that all subsequent orders are void and of no effect. The claim is that the order granting time to file a bill after the term must be made during the term, and that there must be a record entry showing that fact at the time the leave is granted, and that the mere recital in the bill of exceptions of an extension granted is not sufficient. The contention is that November 2d was election day, and that, if a four months' extension was granted, the period ended on and with November 2, 1920, and that the subsequent order extending the term, granted on November 3d, is void.

The majority of the court are of the view that this bill of exceptions was not signed and filed within the time under the circumstances above disclosed. Serious questions of error are presented by this record as errors committed at the trial, which may well warrant a new trial. I do not agree with the view of the majority of the court that there is no valid bill of exceptions, but, in the view that I take of this case, it is not necessary for me to discuss the sufficiency of the bill of exceptions and whether or not the same was signed and filed within the time granted by the court below. I think the indictment is defective and shall proceed to state my reasons.

The first count of the indictment alleges a conspiracy to violate both the Lever Act (40 Stat. 276) and the War Prohibition Act (40 Stat. 1045). It is alleged that this violation of law occurred between the 1st of July and the 15th of November, 1919. The Lever Act became effective August 10, 1917. Titles 1 and 3, and sections 1, 27, 37, 38 of title 2 of the National Prohibition Law (Volstead Act) became effective on October 28, 1919. The other sections of title 2 took effect and were enforced when the Eighteenth Amendment of the Constitution of the United States became effective. The first count of the indictment charges that the plaintiffs in error, both corporate and individual—

"did conspire and agree together and with said divers other persons to violate section 15 of the act of Congress approved August 10, 1917, and the act of November 21, 1918, and the rules and regulations made thereunder, in that at the time and place aforesaid they did conspire and agree together to use and to sell for beverage purposes a large quantity of distilled spirits manufactured from foods, fruits, food materials, and feeds after September 9, 1917, and to sell for beverage purposes, and not for export, large quantities of distilled spirits; and it was a part of the conspiracy that the individual defendants and corporate defendants should purchase such distilled spirits for the ostensible purpose of using it as an ingredient in the manufacture of hair tonic and flavoring extracts, but with the true object and purpose of using and selling such distilled spirits for beverage purposes."

As a charge in furtherance of this conspiracy six overt acts are set forth. In substance it is charged that on November 14 and 15, 1919, the plaintiffs in error, individual and corporate, did various acts such as obtaining a permit, physically obtaining certain barrels of distilled spirits, and delivering five barrels to persons unknown to the grand jury for other than nonbeverage purposes.

The Lever Act was intended to conserve the food supply of the country, while the War Prohibition Act was intended to conserve, in addition, the man power of the country. Under the Lever Act, provision was made for the Commissioner of Internal Revenue to inaugurate and enforce regulations. It was provided by regulation of February 6, 1919, that the manufacture of distilled spirits from foods, fruits, food materials, or feeds for beverage purposes is prohibited after September 8, 1917. The charges of the third count of the indictment are that the plaintiffs in error withdrew alcohol on permits duly issued for alcohol already manufactured ostensibly for nonbeverage purposes, and used and sold such alcohol for beverage purposes. And count 1 charges that the plaintiffs in error conspired to "use and to sell for beverage purposes a large quantity of distilled spirits," claiming a violation of the Lever Act. This is not a charge that the plaintiffs

in error manufactured or prepared beverages and used alcohol for that purpose, or that they thereafter sold the beverages thus manufactured or prepared by them or conspired to do so. This charge is not a violation of the regulations of the manufacture and use of food materials. The Lever Act prohibits only the use of food materials therein specified in the production of distilled spirits for beverage purposes. It in no way prohibits the sale of intoxicating liquors. But the government, to bring the case within the Lever Act, relies upon certain regulations promulgated on February 7, 1917, by the Commissioner of Internal Revenue as such regulations were approved by the Secretary of the Treasury. They are as follows:

"All persons are forbidden to use any distilled spirits manufactured after September 8, 1917, from foods, fruits, food materials or feeds, in manufacturing or preparing beverages or feed, and provided they were made from such materials after September 8, 1917. All persons are forbidden to use any distilled spirits manufactured after September 8, 1917, from foods, fruits, food materials or feeds, in manufacturing or preparing beverages, or to sell any such spirits for beverage purposes."

While the President was authorized to make regulations to enforce by the Lever Act, it was not permissible for the Department of the Treasury, acting for the President, to make or proclaim regulations which were beyond the powers delegated by the Congress to the President in the Lever Act. United States v. Wiltberger, 18 U. S. (5 Wheat.) 76, 5 L. Ed. 37; U. S. v. Bathgate, 246 U. S. 220, 38 Sup. Ct. 269, 62 L. Ed. 676. Regulation must not transgress the statute. Waite v. Macy, 246 U. S. 606, 38 Sup. Ct. 395, 62 L. Ed. 892; U. S. v. Antikamnia Chemical Co., 231 U. S. 654, 34 Sup. Ct. 222, 58 L. Ed. 419, Ann. Cas. 1915A, 49.

By comparing section 1 of the War-Time Prohibition Act (effective November 21, 1918) with section 15 of the Lever Act, it will be observed that in the former act the use of food products for the manufacture of beverages was forbidden, and the act went further and prohibited altogether the sale of any and all intoxicating liquors for beverages purposes. It is clear that this impliedly repealed the Lever Act. U. S. v. Yuginovich, 256 U. S. ——, 41 Sup. Ct. 551, 65 L. Ed. ——, decided June 1, 1921. Therefore count 3 does not charge a crime. Nor does count 1 state a criminal offense in charging a conspiracy to violate the Lever Act.

Title 1 of the National Prohibition Act of October 28, 1919, was effective during the period the conspiracy is charged to have existed and during which the overt acts in furtherance of the conspiracy were committed. It provides for the enforcement of the war prohibition, and it will be noted that the period when it is alleged in the indictment this conspiracy existed in part was after the effective date of the National Prohibition Act (Volstead Act), to wit, from October 28 to November 15, 1919. The acts which are charged to be the overt acts in the furtherance of this conspiracy are alleged to have occurred on the 14th and 15th of November. The National Prohibition Act repealed by implication all preceding revenue provisions because it prohibited the manufacture or sale or removal from warehouses, except for export, of distilled spirits so that laws providing taxes in connec-

tion with such sale or removal are necessarily repealed. U. S. v. Yuginovich, supra, decided June 1, 1921.

In the Yuginovich Case the charge was a violation of section 3257 of the Revised Statutes, unlawfully engaging in the business of distillers within the intent and meaning of the internal revenue laws of the United States, and in defrauding and attempting to defraud the United States of the tax on spirits. It was charged that the plaintiffs in error failed to provide with the requirements of section 3279 of the United States Revised Statutes (Comp. St. § 6019) in exhibiting a sign, as the statute requires, and with section 3281 of the United States Revised Statutes, in carrying on the business of distilling within the intent and meaning of the Revised Statutes of the United States without giving the bond required by law; further, a violation of section 3282 of the Revised Statutes (section 6022) in unlawfully making a mash fit for distillation in a building not a distillery duly authorized by law. The Supreme Court sustained the ruling of the lower court which held that the National Prohibition Act repealed by implication the provisions of the internal revenue laws relating to operation of distilleries. The court said:

"The question remains concerning the applicability of section 3257, involving the right to punish for attempting to defraud the United States of a tax. Did Congress intend to punish such violation of law by imposing the old penalty denounced in section 3257 or as provided in the new and special provision enacted in the Volstead Act?

"It is the contention of the government that section 35 saves the right to prosecute as to taxes, as well as the acts charged as violative of the other sections of the Revised Statutes, because of the phrase with which the section concludes: * * * 'Nor shall this act relieve any person from any liability, civil or criminal, heretofore or hereafter incurred under existing laws.'

"It is, of course, settled that repeals by implication are not favored. It is equally well settled that a later statute repeals former ones when clearly inconsistent with the earlier enactments. United States v. Tynen, 11 Wall. 88, 20 L. Ed. 153. In construing penal statutes, it is the rule that later enactments repeal former ones practically covering the same acts, but fixing a lesser penalty. The concluding phrase of section 35 by itself considered is strongly indicative of an intention to retain the old laws. But this section must be interpreted in view of the constitutional provision contained in the Eighteenth Amendment and in view of the provisions of the Volstead Act intended to make that amendment effective.

"Having in mind those principles and considering now the first count of the indictment charging an attempt to defraud and actually defrauding the government of the revenue tax, we do not believe that the general language used at the close of section 35 evidences the intention of Congress to inflict for such an offense the punishment provided in section 3257 with the resulting forfeiture, fine, and imprisonment, and at the same time to authorize prosecution and punishment under section 35, enacting lesser and special penalties for failing to pay such taxes by imposing a tax in double the amount provided by law, with an additional penalty of $500 on retailers and $1,000 on manufacturers. Moreover, the concluding words of the first paragraph of section 35, as to all the offenses charged, must be read in the light of established legal principles governing the interpretation of statutes, and in view of the provisions of the Volstead Act itself making it unlawful to possess intoxicating liquors for beverage purposes, or property designed for the manufacture of such liquor, and providing for its destruction. We agree with the court below that, while Congress manifested an intention to tax liquors illegally as well as those legally produced, which was within its con-

stitutional power, it did not intend to preserve the old penalties prescribed in section 3257 in addition to the specific provision for punishment made in the Volstead Act."

Where the later act covers the whole subject of the earlier act and embraces new provisions and indicates an attempt to substitute for an earlier act the later—as well as a lesser term of punishment—it prescribes the only rule in respect thereto. It operates as a repeal of all former statutes relating to the subject-matter even if the former acts are not in all respects repugnant to the new statute. U. S. v. Yuginovich, 256 U. S. ——, 41 Sup. Ct. 551, 65 L. Ed. ——, decided June 1, 1921; U. S. v. Tynen, 78 U. S. 88, 20 L. Ed. 153; Tracy v. Tuffly, 134 U. S. 206, 10 Sup. Ct. 527, 33 L. Ed. 879; Reed v. Thurmond (C. C. A.) 269 Fed. 252.

A single act of a conspiracy may charge a violation of two or more laws of the United States, and not be duplicitous. Dealy v. U. S., 152 U. S. 539, 14 Sup. Ct. 680, 38 L. Ed. 545; U. S. v. McKinley (C. C.) 127 Fed. 170; U. S. v. Howard (D. C.) 132 Fed. 325. Still, to constitute a good indictment under section 37, it must be charged that the conspiracy was to do some acts made a crime by the laws of the United States, and it must state with reasonable certainty the acts intended to be effected or carried out by the agreement of the parties, so that it can be seen the object of the conspiracy was a crime against the United States. The conspiracy or agreement and the doing of some act in furtherance of it make up the offense. The indictment must state with reasonable certainty the acts intended to be effected and carried out by the agreement of the parties, so that it can be seen that the object of the conspiracy was a crime, well defined, against the United States.

It is apparent to me that the pleader on the first count had in mind principally the violation of the Lever Act (and the regulations made thereunder), and not the War Prohibition Act. The gravamen of the offense is that the plaintiffs in error used and sold the alcohol manufactured after September 9, 1917, the date fixed by the regulations referred to. Count 1 does not describe the kind of liquor the plaintiffs in error conspired to use and sell. It is referred to, however, as distilled spirits. What is prohibited by the War Prohibition Act is defined. By it Congress intended to prohibit the manufacture, sale, and transportation for beverage purposes of any and every kind of intoxicating liquor within the United States. The liquor must be fit for use for beverage purposes. It cannot be that alcohol which is not converted into beverage form and then offered for sale or sold is forbidden by the War Prohibition Act. There is no charge in the indictment, nor does the evidence show, that any or either of the plaintiffs in error had converted the alcohol into form or shape fit for beverage purposes, and that they intended to offer or did offer the same for sale for beverage purposes, and thus come within the prohibition of section 1 of the War Prohibition Act. As was said in Commonwealth v. Morgan, 149 Mass. 314, 21 N. E. 369:

"It is a matter of common knowledge that alcohol is the intoxicating element in intoxicating liquor, that pure alcohol is not used as a beverage, and

that all intoxicating liquors that are so used contain alcohol mingled with other things, particularly with water. Whisky is alcohol mixed with water and other elements, of which the alcohol alone is intoxicating."

And by the Circuit Court of Appeals in the Eighth Circuit in Allen v. Liquid Carbonic Co., 170 Fed. 315, 95 C. C. A. 11:

"The court below found that the extracts were never manufactured, used, or sold by the company as a beverage, and that they could not be drunk as a beverage in their original and full strength becuse of the strength of the flavoring principle, but were susceptible of use only in imparting flavor to drink or food intended for human consumption. We think the testimony supports this finding of the court and that these extracts are not spurious imitations or compound liquor, within the meaning of section 3244 of the Revised Statutes (U. S. Comp. St. 1901, p. 2096). * * *

"As already indicated, we think this finding is supported by the testimony, and that these extracts are not beverages or liquor, within the meaning of the section of the statute above referred to."

See Commonwealth v. Mandeville, 142 Mass. 469, 8 N. E. 327; Arkansas v. Witt, 39 Ark. 216.

In the court's charge the jury was advised that the offense of count 1 was a conspiracy to violate the Lever Act as well as the Prohibition Act.

Alcohol is a principle in fermenting and distilling liquors. The Century Dictionary defines it as "the chief constituent of fusel oil, a product of fermentation in distilleries, which is contained in crude spirit"; and it is further defined as "a liquid, ethyl hydroxid, $C_2 H_5 OH$, formed by the fermentation of aqueous sugar solutions, usually prepared from starch by the action of malt." Webster defines it as "in the class of analogous hydroxides of organic radicals, including common or ethyl alcohol, methyl or wood alcohol."

Congress in the National Prohibition Act (title 3), which was effective on October 28, 1919, specifically legislated as to the manufacture, warehousing, sale and use of alcohol. Therefore the sale of alcohol as charged in count 10, and in so far as it may be charged in count 1, did not violate the War Prohibition Act. It was not a beverage. Title 3, § 1, provides:

"When used in this title—the term 'alcohol' means that substance known as ethyl alcohol, hydrated oxide or ethyl, or spirit of wine, from whatever source or whatever processes produced."

Section 19 provides that all prior statutes relating to alcohol as defined in this title, are hereby repealed in so far as they are inconsistent with the provisions of this title.

Its use and sale is regulated by title 3. The conditions and scheme of its use and sale are comprehensive. I think this repealed the War Prohibition Act in so far as it affected the use and sale of alcohol, whether considered in the popular sense of distilled spirits or in the more accurate terms of the various known kinds of alcohol. U. S. v. Yuginovich, supra.

Counts 6, 9 and 11 are charges of violation of the revenue statutes. These alleged offenses were committed on November 14 and 15, 1919. They are bad because of the implied repeal of the revenue statutes by the National Prohibition Law.

For these reasons the allegations of the indictment are insufficient to charge a violation of the criminal statutes, and the judgment should be reversed.